NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
:
In re:                                                     :        Chapter 7
     TRY THE WORLD, INC,                   :
                                                  :
               Debtor.               :        Case No. 18-11764-JLG
------------------------------------------------------------------------x
JOHN S. PEREIRA, as Chapter 7 Trustee for the         :
Estate of Try the World, Inc.,                        :
                                                  :
               Plaintiff,             :
                                                  :        Ad. No.: 20-01013-jlg
   -against-                                         :
                                                  :
URTHBOX, INC., KATERINA VOROTOVA,                     :
DAVID EMMANUEL, and JOHN DOES 1, 2, 3,                :
                                                  :
              Defendants.            :
------------------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER RESOLVING MOTION
BY URTHBOX TO DISMISS COMPLAINT OR COMPEL ARBITRATION
AND STAY THE COMPLAINT IN LIEU OF AN ANSWER.**

A P P E A R A N C E S :

LAW OFFICE OF RACHEL S. BLUMENFELD PLLC
*Counsel for UrthBox, Inc.*
26 Court Street, Suite 2220
Brooklyn, New York 11242
By:   Rachel S. Blumenfeld, Esq.

MEDINA LAW FIRM LLC
*Counsel for John S. Pereira, Esq.*
*as Chapter 7 Trustee for Debtor's Estate*
641 Lexington Avenue
New York, New York 10022
By:   Eric S. Medina, Esq.

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

## Introduction[1]

Try The World, Inc. (the "Debtor") is a chapter 7 debtor herein. Less than one year prior to the Petition Date, and pursuant to that certain Asset Purchase Agreement dated September 30, 2017 (the "APA"), Katerina Vorotova and David Emmanuel Foult, the Debtor's principals (collectively, the "Principals"), caused the Debtor to sell substantially all of its assets to Urthbox LLC ("Urthbox") (the "Asset Sale"). John S. Pereira is the chapter 7 trustee (the "Trustee") of the Debtor's estate. In this adversary proceeding, he is suing Urthbox, the Principals, and certain unknown individuals and entities (the "John Doe Defendants" and collectively with the Principals and Urthbox, the "Defendants").

The Trustee named Urthbox as a defendant in ten of the eleven Claims for Relief/Counts alleged in the Amended Complaint.[2] In broad strokes, in the complaint the Trustee seeks alternative forms of relief from Urthbox. Principally, he seeks to avoid and preserve the transfers under the APA (the "Transfers") as fraudulent transfers under state law and the Bankruptcy Code, and to recover the Acquired Assets or their value from Urthbox. Alternatively, he seeks to recover damages occasioned by Urthbox's alleged breach of the APA; and to recover damages based on Urthbox's alleged unjust enrichment through its use of the Acquired Assets after the APA closed. The APA includes an Arbitration Clause pursuant to which the parties agreed that "all disputes, controversies, or claims arising out of or relating to this Agreement or a breach thereof shall be submitted to and finally resolved by arbitration under the rules of the American Arbitration Association . . . then in effect." APA § 18.

---

[1]    Capitalized terms not defined in the Introduction are defined below. Hereinafter, citations to "ECF No. _" refer to documents filed of record in the chapter 7 case (No. 18-11764-jlg). Citation to "AP ECF No. _" refer to documents of record filed in this adversary proceeding.

[2]    *See* First Amended Complaint (the "Am. Complt.") [AP ECF No. 18].

The matter before the Court is Urthbox's motion to dismiss all or select Counts of the Amended Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. §1, et seq. (the "FAA"), or Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"),[3] or in the alternative, to stay prosecution of the Amended Complaint pending arbitration of the arbitrable Counts in the Amended Complaint (the "Motion").[4] The Trustee opposes the Motion (the "Opposition"),[5] and Urthbox filed a reply to the Opposition and in further support of the Motion (the "Reply").[6]

For the reasons discussed below, the Court resolves the Motion, as follows:

Denies the Motion to the extent it seeks to dismiss the Amended Complaint in its entirety pursuant to the FAA and/or Rule 12(b)(6).

Grants the Motion to the extent it seeks to enforce the Arbitration Clause and compel the arbitration of Counts 8 and 9 of the Amended Complaint and stays the prosecution of those claims in the adversary proceeding pending resolution of the arbitration but denies the Motion to arbitrate the Fraudulent Transfer Claims and Counts 5 and 11 of the Amended Complaint.

Denies the Motion to the extent that it seeks to stay prosecution of the non-arbitrable Claims for Relief in the adversary proceeding pending resolution of the arbitration of Counts 8 and 9, and, pursuant to section 105 of the Bankruptcy Code, stays the arbitration of Counts 8 and 9, pending the Court's disposition of the Fraudulent Transfer Claims.

Denies the Motion to the extent it seeks to dismiss the Fraudulent Transfer Claims pursuant to Rule 12(b)(6).

---

[3]  Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[4]  *See Defendant's Motion and Incorporated Points of Law to Dismiss the Complaint or Compel Arbitration and Stay the Complaint in Lieu of an Answer* [AP ECF No. 25].  Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") make Rule 12(b)(6), respectively, applicable herein.

[5]  *See Chapter 7 Trustee's Objection to Motion of Urthbox, Inc. to: (I) Dismiss Adversary Complaint; (II) Compel Arbitration; and/or Stay Complaint in Lieu of Answer* [AP ECF No. 26].

[6]  *Defendant's Reply to Chapter 7 Trustee's Objection to Motion of Urthbox, Inc.; (I) Dismiss Adverversary [sic] Complaint; (II) Compel Arbitration; and/or Stay Complaint in Lieu of Answer* [AP ECF No. 27].

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Facts[7]

Background

On or about April 10, 2013, the Principals, acting as equal members, formed the Debtor as a Delaware Limited Liability Company. *See* Am. Complt. ¶ 12. Beginning in or about 2013, the Debtor operated a subscription-based, as well as a "one-time purchase," snack food box delivery service. *See id.* ¶ 13. To that end, it solicited subscribers and customers to purchase boxes of food and snacks sourced from a variety of different countries "around the world," and then sent them on a monthly or one-time basis to its subscribers or customers to "Try the World." *See id.* The Trustee maintains that the Debtor "operated a successful business" and as support points to the following:

(i)      In 2016 the Debtor had gross revenue of over $14,023,294.00.

(ii)     By 2017 the Debtor had over 35,000 customers, a vast social media following, valuable intellectual property assets, including good will, and assets of $2,791,745 and liabilities of $2,627,771, including over $1.2 million of deferred revenue in the form of advance customer payments for the Debtor's products.

(iii)     In June 2017, the Debtor solicited and obtained new equity investments of an additional $865,707.95.

(iv)     By September 7, 2017, the Debtor had collected $6,231,706 in revenue and was projected to hit $10,000,000 in sales with a 46% gross margin on units.

---

[7]     The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Accordingly, the facts recited herein are those alleged in the Amended Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

3

*See id.* ¶¶ 15-20.

Urthbox is "another snack subscription company." *Id.* ¶ 21. On or about September 30,

2017, the Debtor entered into the APA transaction with Urthbox. *See id.* Under the APA, the

Debtor assigned substantially all its tangible and intangible assets (including good will) (the

"Acquired Assets") to Urthbox in consideration for:

> (i)      Urthbox's agreement to assume the full obligations to deliver the
> approximately 35,000 pre-paid customer boxes being transferred by the Debtor to
> Urthbox.
>
> (ii)     An earn-out percentage of the revenue and cash receipts deposited into the
> Urthbox bank accounts resulting from the continuation and operation of, or from
> customers subscribing to, the Debtor's business after the closing date, net of
> miscellaneous monthly fees, customer chargebacks and customer credits, in an
> amount not to exceed $772,000.
>
> (iii)    The issuance of a convertible note valued at $500,000 (the "Convertible
> Note") to the Debtor's then current investors (including the Principals) based on
> their ownership of so-called Series Seed Preferred Equity, subject to the passing
> of thirty (30) calendar days from the closing date under the APA and the payment
> of at least $200,000 in earn-out payments to the Debtor.

*See* APA, Schedule 1 (Acquired Assets), Schedule 2 (Purchase Price).[8] The APA contains a

"Choice of Law and Arbitration" clause in which the parties designated California law as

governing the APA, and agreed that disputes under the APA will be resolved by arbitration. The

clause states, as follows:

> This Agreement shall be governed by and construed in accordance with the
> domestic laws of the State of California. **Except for actions to protect**

---

[8]   The Trustee references the APA in the Amended Complaint. *See, e.g.*, Am. Complt. ¶ 22. It is settled that, in
resolving a motion to dismiss, the Court is "free to consider documents that are incorporated into the complaint by
reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in
drafting the complaint." *Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC*, 298
F.3d 136, 140 (2d Cir. 2002). *See also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–54 (2d Cir. 2002) ("For
purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any
statements or documents incorporated in it by reference.' ") (citation omitted); *In re Spiegel, Inc*., 337 B.R. 821, 824
(Bankr. S.D.N.Y. 2006) ("Documents whose terms and effect are relied upon by the plaintiff in drafting the
complaint may be considered on a motion to dismiss, even if the documents are not submitted as exhibits by the
plaintiff.")

**Proprietary Rights and to enforce an arbitrator's decision hereunder, all disputes, controversies, or claims arising out of or relating to this Agreement or a breach thereof shall be submitted to and finally resolved by arbitration under the rules of the American Arbitration Association ("AAA") then in effect. There shall be one arbitrator, and such arbitrator shall be chosen by mutual agreement of the parties in accordance with the AAA rules. The arbitration shall take place in the state of California. The arbitrator shall apply the laws of the State of California, to all issues in dispute. The findings of the arbitrator shall be final and binding on the parties, and may be entered in any court of competent jurisdiction for enforcement.** Any party may make service on the others by sending or delivering a copy of the process by internationally recognized express mail carrier to the others at the respective addresses set forth in this Agreement.

APA ¶ 18 (highlighted language to be referred to as the "Arbitration Clause").

On June 9, 2018 (the "Petition Date"), less than one year after the parties closed the Asset Sale transaction, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court.[9] On June 11, 2018, the Trustee was appointed as chapter 7 trustee of the Debtor's estate and continues to serve in that capacity. The bar date for filing claims herein is January 18, 2019. Urthbox has not filed a claim herein.

### The Adversary Proceeding

On or about February 11, 2020, the Trustee commenced this action against the Defendants by filing his Complaint.[10]  On September 2, 2020, the Trustee filed his Amended Complaint. In support of his claims against Urthbox, the Trustee asserts that the APA was structured to defraud the Debtor's creditors in "multiple ways," because: the Debtor already owned all of the Acquired Assets purchased by Urthbox, the Debtor had collected at least $1,200,000 in prepaid subscriptions from its customers, and the Convertible Note was issued to the Debtor's equity holders in violation of the rights of the Debtor's creditors. *See* Am. Complt.

---

[9]    *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy (Official Form 201) [ECF No. 1].

[10]    *See* Complaint [AP ECF No. 1].

¶¶ 24-25. He says that the Debtor was insolvent on or before September 30, 2017, and that the

Principals and the John Doe Defendants knew or reasonably should have known that a transfer

pursuant to the APA would render the Debtor insolvent. *See id.* ¶¶ 26, 32. The Trustee also

maintains that the Debtor received less than reasonably equivalent value for the Acquired Assets

since, among other things, at the time of the Asset Sale the value of those assets far exceeded

$1,200,000 (*i.e.*, the consideration comprised of the maximum earnout ($722,000) and

convertible notes ($500,000)), all the payments that Urthbox made to the Debtor were generated

from clients that belonged to the Debtor and that were transferred to Urthbox pursuant to the

APA and, as such, those payments constituted no value whatsoever to the Debtor, and because

the Debtor received not more than $196,000 under the APA. *See id.* ¶¶ 24, 31, 33-34. He also

notes that as of October 16, 2018, Urthbox listed its Try the World business for sale at a price of

$1,595,000 and showing gross revenues of $1,900,000 and $700,000 in cash flow. *See id.* ¶ 38.

The Trustee asserts the following nine Claims for Relief against Urthbox:

<u>Avoidance and Recovery of Fraudulent Transfers</u>

In five Claims for Relief (the "Fraudulent Transfer Claims"), pursuant to Bankruptcy

Code and New York state fraudulent transfer laws, the Trustee seeks to avoid and preserve the

Transfers and to recover the Acquired Assets, or the value thereof, from Urthbox for the benefit

of the Debtor's creditors. Specifically, the Trustee seeks to:

> Avoid and preserve the Transfers as actual fraudulent transfers pursuant to
> sections 544(b) and 551 of the Bankruptcy Code and recover the Acquired Assets.
> *See* Count 1, Am. Complt. ¶¶ 40-47.

> Avoid and preserve the Transfers and recover the Acquired Assets as actual
> fraudulent transfers pursuant to sections 548(a)(1)(A) and 551 of the Bankruptcy
> Code and recover the value of the Acquired Assets under section 550 of the
> Bankruptcy Code. *See* Count 3, *id*. ¶¶ 57-62.

6

Avoid and preserve the Transfers as constructively fraudulent transfers pursuant to sections 548(a)(1)(B) of the Bankruptcy Code and recover the value of the Acquired Assets under section 550 of the Bankruptcy Code. *See* Count 4, *id*. ¶¶ 63-67.

Avoid, preserve and recover the Transfers, direct that the Transfers be set aside or, alternatively, award the value of the Transfers, as fraudulent transfers under the New York Debtor and Creditor Law ("NYDCL")[11] pursuant to sections 544(b)(1) and 550 of the Bankruptcy Code, and sections 271-73, 278 of the NYDCL (*see* Count 6, *id*. ¶¶ 72-76), and section 274 of the NYDCL. *See* Count 7, *id*. ¶¶ 77-81.

Disallowance of Claim

The Trustee seeks an order pursuant to section 502(d) of the Bankruptcy Code disallowing Urthbox's claims against the Debtor until such time as Urthbox pays the Debtor an amount equal to the aggregate amount of the Acquired Assets, with interest.  *See* Count 5, *id*. ¶¶ 68-71.

Breach of Contract

The Trustee contends that Urthbox promised to pay the Debtor at least $780,000 to the Debtor on account of the Acquired Assets in addition to issuing the Convertible Note but failed to do so. The Trustee seeks to recover damages from Urthbox in an unspecified amount on account of its alleged breach of the APA. *See* Count 8, *id*. ¶¶ 82-85.

Unjust Enrichment

The Trustee asserts that Urthbox has "unjustly" taken the value of the Debtor's assets to the detriment of the Debtor and its creditors and, as a consequence, has been unjustly enriched at the expense of the Debtor's estate. The Trustee maintains that he is entitled to recover damages

---

[11]   The NYDCL was amended effective April 4, 2020.  The amended statute applies to transactions occurring on or after April 4, 2020.  *See* NY LEGIS 580 (2019), 2019 Sess. Law News of N.Y. Ch. 580 (A. 5622) (McKINNEY'S). As such, the amendments are inapplicable to this matter.

7

for the diminished value of the Debtor's business (and its assets and proceeds) during the period

they were held and operated by Urthbox. *See* Count 9, *id.* ¶¶ 86-89.

<u>Accounting and Turnover</u>

The Trustee seeks an accounting from Urthbox of all assets that were sold pursuant to the

APA and all proceeds derived by the Debtor, the Defendants, or anyone else, pursuant to the

APA, all assets and proceeds that were not sold pursuant to the APA, and all proceeds that

remained with the Debtor after the Asset Sale and were not sold pursuant to the APA. *See* Count

11, *id.* ¶¶ 96-100.

**<u>The Motion to Dismiss</u>**

In the Motion, Urthbox seeks relief under the FAA and Rule 12(b)(6). It contends that the

Amended Complaint is predicated upon the APA, the APA includes the Arbitration Clause and

that the Court should enforce that clause by directing the parties to arbitrate all the Claims for

Relief in California as called for under the APA, and dismiss the Amended Complaint in favor of

the arbitration proceedings. *See, e.g.,* Motion ¶¶ 59-70. Urthbox also contends that if the Court

determines that the Fraudulent Transfer Claims, or the breach of contract claim (Count 8) or

unjust enrichment claim (Count 9) are non-arbitrable claims, it should dismiss the claims

pursuant to Rule 12(b)(6) without leave to replead, because none of them state a claim for relief

against Urthbox. *See id.* ¶¶ 38-58; *see also* Reply at 8. Finally, it contends that the Court should

stay the prosecution of the Amended Complaint, pending completion of the arbitration of the

arbitrable Counts in the Amended Complaint. *See* Motion ¶¶ 63-70.  The Trustee denies that

Urthbox is entitled to any relief herein. He contends that none of the Claims for Relief are

arbitrable either because they belong to the creditors and are not derivative of the Debtor's rights

and the creditors are not subject to the APA, or because the claims fall within the Court's core

8

bankruptcy jurisdiction and, as such, for policy reasons, are excepted from application of the

mandatory arbitration provisions in the FAA. *See* Opposition ¶¶ 21-27. He also asserts that the

Amended Complaint adequately pleads all the Claims for Relief and, as such, Urthbox is not

entitled to relief under Rule 12(b)(6). *See id.* ¶¶ 16-20.

   As relevant, the FAA provides that a written agreement to arbitrate "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. Moreover, where an issue arises in federal court that

falls within the scope of an enforceable arbitration agreement, the FAA directs that the court

"shall on application of one of the parties [to such agreement] stay the trial of the action until

such arbitration has been had in accordance with the terms of the agreement, providing the

applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Accordingly, by its terms, the FAA "establishes a 'federal policy favoring arbitration

agreements,' and mandates the enforcement of contractual arbitration provisions." *MBNA Am.*

*Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Burns v. New York Life Ins. Co.,* 202

F.3d 616, 620 (2d Cir.2000) ("The Federal Arbitration Act . . . requires a federal court to

enforce arbitration agreements and to stay litigation that contravenes them."). That policy is both

"liberal" and "strong." *See Cardali v. Gentile, (In re Cardali)*, No. 10-11185 (SHL), 2010 WL

4791801, at *3 (Bankr. S.D.N.Y. Nov. 18, 2010) (collecting cases). It is settled that "[w]hen

some claims before the court are arbitrable and others are not, a court has no discretion to hear

the arbitrable claims, notwithstanding that those claims are based on facts common to the non-

arbitrable claims." *Nilsen v. Prudential–Bache Sec.*, 761 F. Supp. 279, 284 (S.D.N.Y. 1991). *See*

*also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[T]he Arbitration Act

9

requires district courts to compel arbitration of pendent arbitrable claims when one of the parties

files a motion to compel, even where the result would be the possibly inefficient maintenance of

separate proceedings in different forums.").

     "Whether or not a matter is arbitrable is a matter for judicial determination." *Spear, Leeds*

*& Kellogg v. Cent Life Assurance Co.,* 85 F.3d 21, 25 (2d Cir. 1996). Where, as here, there is no

dispute that the APA is unambiguous and enforceable, the Court can resolve the request to

enforce the Arbitration Clause at the pleading stage, pursuant to a Rule 12(b)(6) motion, rather

than pursuant to a post-discovery motion for summary judgment. In *Nicosia v. Amazon.com Inc.,*

834 F.3d 220 (2d Cir. 2016), the Second Circuit explained, as follows:

> In sum, when it is apparent—on the face of the complaint and documents properly
> incorporated therein—that claims are subject to arbitration, a district court may
> dismiss in favor of arbitration without the delay of discovery. *See Guidotti v.
> Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774–76 (3d Cir. 2013). If,
> however, there is a dispute as to the relevance, authenticity, or accuracy of the
> documents relied upon, the district court may not dismiss the complaint with
> those materials in mind. *Cf. Chambers*, 282 F.3d at 154. If the district court is
> going to rely on the extrinsic materials, the proper course is to convert the motion
> to a motion for summary judgment dismissing the case in favor of arbitration,
> after providing notice to the parties and an opportunity to be heard.

*Id.* at 231.

     By application of Rule 12(b)(6), a court can dismiss a complaint if it "fail[s] to state a

claim for relief upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In applying the rule,

courts assess the sufficiency of the complaint in light of the pleading requirements in Rule 8 of

the Federal Rules of Civil Procedure ("Rule 8").[12] Rule 8(a)(2) provides that a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

Fed. R. Civ. P. 8(a)(2). To meet that standard, the complaint "must contain sufficient factual

---

[12]   Rule 8 is made applicable herein by Bankruptcy Rule 7008.

10

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. To satisfy Rule 12(b)(6), the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In considering whether that standard is met for a particular claim, the court must assume the truth of all material facts alleged in support of the claim and draw all reasonable inferences in the claimant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the court "need not accord 'legal conclusions, deductions or opinions that are couched as factual allegations . . . a presumption of truthfulness.'" *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 591 (S.D.N.Y. 2008) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). In short, "[i]n ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (noting that under Rule 12(b)(6), the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims") (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996)). Where, as here, the Amended Complaint includes claims seeking to avoid transfers of estate property as actual fraudulent conveyances under state and federal law pursuant to sections 544 and 548(a)(1)(A) of the Bankruptcy Code (Counts 1 and 3), those

11

claims must satisfy the additional pleading requirements of Rule 9(b) of the Federal Rules of

Civil Procedure ("Rule 9(b)") for pleading fraud.[13] *See Sharp Int'l Corp. v. State Street Bank*

*& Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *see also In re Bernard L.*

*Madoff Inc. Sec. LLC*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) ("Actual fraudulent transfer

claims brought under either section 548(a)(1)(A) of the Code or section 276 of the NYDCL must

meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure." (citations omitted)).  Under that rule, a plaintiff alleging fraud must state "the

circumstances constituting fraud . . . with particularity."  Fed. R. Civ. P. 9(b).

"[A] federal court has leeway to choose among threshold grounds for denying audience

to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431

(2007) (*quoting Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). *See In re*

*Residential Capital, LLC,* 563 B.R. 756, 766 (Bankr. S.D.N.Y. 2016*)* (deciding arbitration

motions before motion to dismiss for lack of personal jurisdiction or failure to state a claim);

*Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011) (holding it was

within the court's discretion to first address the defendant's motion to stay or dismiss in favor of

arbitration, which made it unnecessary to reach the defendant's motion to dismiss for lack of

personal jurisdiction or for failure to state a claim). In reviewing the merits of the Motion, the

Court first will consider whether any of the Claims for Relief fall within the scope of the

Arbitration Clause and, as such, must be referred to arbitration. Thereafter, the Court will

consider whether the non-arbitrable claims state claims for relief under Rule 12(b)(6) (to the

extent so challenged by Urthbox) and whether to stay prosecution of non-arbitrable Claims for

Relief, pending the resolution of the arbitration proceedings.

---

[13]    Rule 9 is made applicable herein by Bankruptcy Rule 7009.

**Discussion**

In resolving a request to compel arbitration, a bankruptcy court must consider the

following four factors:

(1) whether the parties agreed to arbitrate;

(2) whether the dispute falls within their arbitration clause;

(3) if federal statutory claims are raised, whether Congress intend those claims to
be arbitrable; and

(4) if the court concludes that some but not all of the claims are arbitrable,
whether it should stay the non-arbitrable claims pending the conclusion of the
arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987); *see also Bethlehem*

*Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.),* 390 B.R. 784, 789 (Bankr.

S.D.N.Y. 2008) ("*Bethlehem Steel* "); *Kittay v. Landegger* (*In re Hagerstown Fiber P'ship*)

*("Hagerstown"*), 277 B.R. 181, 198 (Bankr. S.D.N.Y. 2002)).

Below, the Court applies those factors herein.

<u>Whether the Parties Agreed to Arbitrate</u>

The " 'question of arbitrability,' is an issue for judicial determination unless the parties

clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d at 229

(quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d

491 (2002)). Since arbitration is a matter of contract between the parties, in assessing this factor,

courts apply state law contract principles. *See Specht v. Netscape Communications Corp.*, 306

F.3d 17, 27 (2d Cir. 2002) ("[I]n  deciding whether parties agreed to arbitrate a certain matter, a

court should generally apply state-law principles to the issue of contract formation."). The parties

do not dispute that the APA is an enforceable agreement among them and that under the

Arbitration Clause, they agreed that "all disputes, controversies, or claims arising out of or

13

relating to this Agreement or a breach thereof shall be submitted to and finally resolved by arbitration under the rules of the American Arbitration Association . . . then in effect." APA ¶ 18.

The Court must determine the arbitrability of the Claims for Relief on a claim-by-claim basis. An important aspect of the analysis is consideration of whether the claims that the Trustee is asserting belong to the Debtor or to estate's creditors. As the statutory successor to the Debtor, and the estate representative, *see* 11 U.S.C. § 323(a), "the Trustee is not simply the successor in interest to the Debtor: he represents the interest of all creditors of the Debtor's bankruptcy estate." *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 705 (6th Cir. 1999). As such, the trustee stands in the shoes of the Debtor and may bring any suit that the Debtor could have brought prepetition. *See Hagerstown,* 277 B.R. at 206. When a trustee sues in that capacity, "his rights are limited to the same extent as the debtor's under applicable nonbankruptcy law." *Id.* Consequently, because a trustee is bound by a debtor's agreement to arbitrate claims, the "[c]laims that are derivative of [the debtor's] rights may by subject to arbitration." *Bethlehem Steel*, 390 B.R. at 791. In contrast, if a trustee is asserting claims that belong to the creditors – like fraudulent transfer claims under section 548 of the Bankruptcy Code -- the trustee is not bound by an arbitration clause, and cannot be compelled to arbitrate those claims. *See id.*

<u>Whether the Dispute Falls Within the Arbitration Clause</u>

In assessing the breadth of the Arbitration Clause, the Court must determine "whether the arbitration clause is 'narrow' or 'broad,' in light of the allegations of the complaint, not the legal theories espoused." *In re S.W. Bach & Co.*, 425 B.R. 78, 88 (Bankr. S.D.N.Y. 2010) ("*S.W. Bach*") (citing *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 21 (2d Cir. 1995) ("*Collins & Aikman*"), s*ee also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that

14

purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit

arbitration to specific types of disputes); *In re Residential Capital, LLC*, 563 B.R. 756, 768

(Bankr. S.D.N.Y. 2016) ("*Residential Capital*") ("In determining whether the arbitration clause

covers the dispute at issue, courts consider whether the arbitration clause is "narrow" or "broad"

in light of the allegations of the complaint."). In *Collins & Aikman*, the Second Circuit addressed

the relevance of the distinction between broad and narrow clauses, as follows:

> In construing arbitration clauses, courts have at times distinguished between
> 'broad' clauses that purport to refer all disputes arising out of a contract to
> arbitration and 'narrow' clauses that limit arbitration to specific types of disputes.
> If a court concludes that a clause is a broad one, then it will order arbitration and
> any subsequent construction *of the contract and of the parties' rights and
> obligations under it* are within the jurisdiction of the arbitrator.

*Collins & Aikman,* 58 F.3d at 21. That is to say that if the arbitration clause is broad, arbitrability

will be presumed. *Hagerstown*, 277 B.R. at 198 (citations omitted). *Accord In re Cardali*,  2010

WL 4791801, at *12.

In general, courts find that provisions calling for the arbitration of "any dispute or

controversy" that "arises out of" or is "related to" the underlying agreement are broad arbitration

clauses. *See, e.g., Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998) (noting that

"clause provides for arbitration of 'any controversy or claim between [the parties] arising out of

or relating to' the Agreement. We have previously decided that this is 'precisely the kind of

broad arbitration clause that justifies a presumption of arbitrability.' ") (citation omitted); *Collins

& Aikman,* 58 F.3d at 20 (holding that a clause "submitting to arbitration '[a]ny claim or

controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.")

(citation omitted) (alterations in original); *Residential Capital,* 565 B.R. at 769 (finding that

arbitration language providing that "[a]ny dispute controversy or claim arising out of or relating

to" the agreement was "exceedingly broad"). In contrast, arbitration agreements that merely

provide for the arbitration of "any dispute or matter that arises . . . under this [a]greement" are narrow. *See Hagerstown*, 277 B.R. at 204. Therefore, the "paradigmatic broad clause" includes language that includes "disputes 'relating to' or 'in connection with' the contract." *Id.* at 204-205. Consistent with the strong federal policy favoring arbitration, "doubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25); *see also S.W. Bach*, 425 B.R. at 86-87 ([A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (citations omitted).

There is no doubt that the Arbitration Clause is broad in scope as it calls for the arbitration of "all disputes, controversies, or claims arising out of or relating to [the APA] or a breach thereof." *See* APA ¶ 18. *See, e.g.*, *JLM Industries, Inc. v. Stolt Neilson SA*, 387 F.3d 163, 172 (2d Cir. 2004) (finding that clause submitting to arbitration "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" was a broad form of clause); *Mehler v. The Terminix International Co.*, L.P., 205 F.3d 44, 49 (2d Cir. 2000) (finding that clause referring to arbitration "over controversy or claim between [the parties] arising out of or relating to" an agreement was broad); *S.W. Bach*, 425 B.R. at 88 (finding a clause referring to arbitration "any controversy or claim between [the parties] arising out of or relating to" an agreement to be broad, justifying a presumption of arbitrability). Thus, there is a presumption that the Claims for Relief are arbitrable.

Whether Congress Intended the Statutory
Claims At Issue Herein to be Arbitrated

"Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226

16

(1987). There are plainly conflicting congressional mandates in disputes involving both the

Bankruptcy Code and FAA, because "bankruptcy policy exerts an inexorable pull towards

centralization while arbitration policy advocates a decentralized approach towards dispute

resolution." *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n* (*In re U.S. Lines,*

*Inc.*), 197 F.3d 631, 640 (2d Cir.1999), *cert. denied,* 529 U.S. 1038 (2000) (internal quotations

and citation omitted). *See also Hagerstown*, 277 B.R. at 200 (noting that "[w]hen arbitration law

meets bankruptcy law head on, clashes inevitably develop."). A bankruptcy court has the

discretion to decline to compel arbitration of an otherwise arbitrable claim when such a conflict

exists. *See In re U.S. Lines, Inc*., 197 F.3d at 639 ("In the bankruptcy setting, congressional

intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override. . .

arbitration agreements."). Accordingly, in reviewing application of this factor, the Court must

consider "Congress's policy in favor of arbitration as weighed against the important federal

interests embodied in the Bankruptcy Code." *In re Cardali*, 2010 WL 4791801, at *12. The party

opposing arbitration bears the burden of proving that "Congress intended to preclude a waiver of

judicial remedies for the statutory rights at issue." *Shearson/American Express Inc*., 482 U.S. at

227. That congressional intent can be discerned from either the "[statute's] text or legislative

history or from an inherent conflict between arbitration and the statute's underlying

purposes." *Id.* (internal quotations and citations omitted). "The issue of waiver predominates

arbitration disputes involving bankruptcy claims . . ." *Hagerstown,* 277 B.R. at 198. In

considering whether a claim is subject to an otherwise enforceable arbitration clause, courts

focus on two factors: (i) whether the claim arises in a core or non-core proceeding, and (ii) if the

claim is core, whether any underlying purpose of the Bankruptcy Code would be adversely

affected by enforcing the arbitration clause. *See In re Cardelli*, 2010 WL 4791801, at *7. The

17

second factor focuses on "whether the underlying dispute concerns rights created under the

Bankruptcy Code or non-Bankruptcy Code issues derivative of the debtor's pre-petition business

activities. In the former situation, the bankruptcy court has discretion to refuse arbitration, but in

the latter it does not." *Hagerstown*, 277 B.R. at 202.

"Non-core" proceedings are merely "related to" bankruptcy cases. 28 U.S.C. § 157(c)(1)

(stating that non-core proceedings are those that are not core, "but [are] otherwise related to a

case under title 11."). For these purposes, "a civil proceeding is 'related to' a title 11 case if the

action's outcome might have any conceivable effect on the bankruptcy estate." *Parmalat Capital*

*Fin., Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011). *See also  Publicker Indus.,*

*Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992) (Noncore

or "related to" jurisdiction encompasses proceedings that are not core proceedings but

nevertheless "might have a 'conceivable effect' on the bankrupt estate."). In contrast to core

claims, the bankruptcy court cannot "hear and determine" non-core claims unless the parties

consent. Without such consent, the bankruptcy court can only make recommended findings of

fact and conclusions of law which are subject to *de novo* review in the district court. 28 U.S.C.

§§ 157(c)(1) and (2).  Non-core proceedings include "causes of action owned by the debtor

which become property of the estate pursuant to 11 U.S.C. § 541 ...." *Celotex Corp. v. Edwards*,

514 U.S. 300, 307 n.5 (1995). *See also Robinson v. Daley (In re Daley)*, 224 B.R. 307, 313

(Bankr. S.D.N.Y. 1998) ("Causes of action owned by the debtor prior to its bankruptcy and

which become property of the debtor's estate, as well as suits between third parties which have

an effect on the bankruptcy estate are bases for related-to jurisdiction."). It is settled that non-

core proceedings "are unlikely to present a conflict sufficient to override by implication the

presumption in favor of arbitration." *U.S. Lines,* 197 F.3d at 640 (citing *Hays & Co. v. Merrill*

18

*Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir. 1989)). Accordingly,

"bankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in

favor of arbitration." *In re Crysen/Montenay Energy Co*., 226 F.3d 160, 166 (2d Cir. 2000). *See*

*also Hagerstown,* 277 B.R. at 200 ("[N]otwithstanding the possibility of bifurcated or even

trifurcated proceedings, or duplicative proceedings involving multiple parties, a court generally

lacks the discretion to refuse to compel the arbitration of noncore claims.")  (citation omitted).

    "Core" proceedings are matters "arising under" the Bankruptcy Code or "arising in"

bankruptcy cases. 28 U.S.C. § 157(b). "Bankruptcy judges have the authority to 'hear and

determine all ... core proceedings arising under title 11 ... and may enter appropriate orders and

judgments, subject to review under section 158 of [title 28.]' " *S.G. Phillips Constructors, Inc. v.*

*City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 704 (2d Cir.

1995) (quoting 28 U.S.C. § 157(b)(1)). The statute sets out a non-exhaustive list of core

bankruptcy proceedings, subject to the constitutional limits established by *Northern Pipeline*

*Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) ("*Marathon"*) and its progeny.

"Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise

under Title 11 and are deemed core proceedings. So too are proceedings that, by their nature,

could arise only in the context of a bankruptcy case." *MBNA America Bank, N.A. v. Hill,* 436

F.3d 104, 108–09 (2d Cir. 2006) (internal citations omitted). *Marathon* stands for the proposition

that "Congress has minimal authority to control the manner in which 'a right created by state

law, a right independent of and antecedent to the reorganization petition that conferred

jurisdiction upon the Bankruptcy Court' may be adjudicated.' " *In re U.S. Lines*, 197 F.3d at 637

(quoting *Marathon,* 458 U.S. at 84). Thus, under *Marathon*, "[w]hether a contract proceeding is

core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the

degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on

the nature of the proceeding." *Id.* (internal quotation marks and citation omitted).

Core claims are not automatically excepted from the reach of otherwise enforceable

arbitration clauses. If the claim is core, "the bankruptcy court must still carefully determine

whether any underlying purpose of the Bankruptcy Code would be adversely affected by

enforcing the arbitration clause," and the "arbitration clause should be enforced unless [doing so]

would seriously jeopardize the objectives of the Code." *Hagerstown*, 277 B.R. at 200-01

(internal quotation marks and citations omitted). That is because "not all bankruptcy proceedings

are premised on provisions of the [Bankruptcy] Code that 'inherently conflict' with the Federal

Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives

of the Bankruptcy Code." *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty

Corp.)*, 270 B.R 108, 118 (S.D.N.Y. 2000). Courts determine the extent of any conflict on a

claim by claim basis. *See Bethlehem Steel,* 390 B.R. at 794 (noting that to determine whether a

conflict exists between the Bankruptcy Code and FAA to deny a request to arbitrate "requires a

particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.")

(quoting *MBNA Am. Bank*, 436 F.3d at 108). In undertaking that analysis, some courts focus on

distinguishing "procedurally core" claims from "substantively core" claims. *See S.W. Bach*, 425

B.R. at 90-92. Procedurally core claims are typically "garden variety pre-petition contract

disputes dubbed core because of how the dispute arises or gets resolved." *Hagerstown,* 277 B.R.

at 203.  "[N]on-core claims against a creditor may turn into core claims after the creditor files a

proof of claim since an adversary proceeding against such creditor would affect the allowance

or disallowance of the creditor's claim. . . . If an otherwise non-core claim aris[es] out of the

same transaction as the creditor's proof of claim, or the adjudication of the claim ... require[s]

consideration of the issues raised by the proof of claim ... such that the two are logically

connected, the claim is core." *S.W. Bach,* 425 B.R. at 90 (internal quotation marks and citations

omitted) (alterations in original). Objections to proofs of claim and counterclaims asserted by the

estate are representative of procedurally core claims. *See Hagerstown*, 277 B.R. at 203. "The

arbitration of a procedurally core dispute rarely conflicts with any policy of the Bankruptcy Code

unless the resolution of the dispute fundamentally and directly affects a core bankruptcy

function." *Id.*

In contrast, substantively core claims are typically not based upon the parties' prepetition

relationship, but instead "involve rights created under the Bankruptcy Code." *Hagerstown,* 277

B.R. at 203. These claims often are not subject to a contractual arbitration clause as parties likely

did not agree to arbitrate them. *See id.*   But even if they are covered, "it is more likely that

arbitration will conflict with the policy of the Bankruptcy Code that created the right in dispute."

*Id.*   Other courts, without explicitly addressing whether claims are procedurally or substantively

core, focus on whether the "action has a significant impact on the administration of the estate."

*See In re MF Glob. Holdings Ltd.*, 571 B.R. 80, 94 (Bankr. S.D.N.Y. 2017) (citing *U.S. Lines*,

197 F.3d at 638). For instance, in *U.S. Lines*, the court found that notwithstanding that the claims

at issue were based upon prepetition insurance contracts, the proceeding was a core proceeding

because of the resolution of those disputes was bound to have a significant impact on the

administration of the estate. *See U.S. Lines*, 197 F.3d at 638.

Below, the Court considers the arbitrability of the claims at issue in the Amended

Complaint.

Avoidance Actions—Counts 1, 3, 4, 6, and 7

21

In five Counts, the Trustee focuses on the APA and seeks to avoid and preserve the Transfers and recover the Acquired Assets, or the value thereof, under both state law, made applicable by section 544 of the Bankruptcy Code (Counts 1, 6, 7), and under section 548 of the Bankruptcy Code (Counts 3, 4). Urthbox summarily contends that the fraudulent transfer claims are not arbitrable because they are "a variant of state law/common law fraudulent conveyance claims" and are subject to arbitration.  Motion ¶ 66 (citing *In re Pfeiffer*, No. Adv. 11-0421, 2011 WL 4005504, at *5 (Bankr. E.D. Pa. Sept. 8, 2011) (finding that certain fraudulent transfer claims were "but a variant" of the plaintiff's usury claim, and so declining to exercise its discretion to prevent arbitration). In response, the Trustee argues that the fraudulent transfer claims are not arbitrable because those claims belong to the Trustee and estate creditors and they are not parties to the APA. *See* Opposition ¶ 21.

The Trustee has the better argument.[14] The right to recover fraudulent transfers by a trustee or debtor in possession becomes a claim, as that term is defined in section 101 of the Bankruptcy Code, and comes into existence once the transferor of that payment sought to be recovered files a petition under the Code. *See In re Worldcom, Inc.,* 401 B.R.637, 646 n.12 (Bankr. S.D.N.Y. 2009) (citing *Wallach v. Frink Am., Inc.* (*In re Nutall Equip. Co., Inc.*), 188 B.R. 732, 736 (Bankr. W.D.N.Y. 1995)). "Avoidance claims are not derivative of the debtor's rights, rather they are statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession . . .." *In re Bethlehem Steel,* 390 B.R. at 791. The creditors are

---

[14]    Urthbox's reference to *In re Pfeiffer* is inapposite.  In that case, the court found that all of the counts except for the fraudulent transfer claim were non-core and therefore must be arbitrated. *See In re Pfeiffer*, 2011 WL 4005504, at *5.  Further, with regard to the fraudulent transfer claim, the court found that it was essentially just a "variant" of the plaintiff's non-arbitrable usury claim, and therefore declined to exercise its discretion to keep the claim.  *See id.* The fraudulent transfer claims in this case stand on their own merits, and are not just "variants" of the arbitrable claims.

not parties to the APA and, as such, the Arbitration Clause is not binding on them. *See id.*

("Claims that belong exclusively to a trustee or debtor in possession belong to creditors who

were not parties to the arbitration agreement and, therefore, are not subject to arbitration.")

Moreover, under section 544(b) of the Bankruptcy Code, the Trustee stands in the "overshoes" of

the Debtor's creditors, and this section "authorizes the [Trustee] to avoid any transfer that an

actual creditor holding an allowable claim could have avoided under applicable law."

*Hagerstown,* 277 B.R. at 206-7. Urthbox cannot demonstrate that there was an agreement to

arbitrate the section 544 claims, as they are brought on behalf of the Debtor's creditors, and the

creditors did not agree to be bound by the Arbitration Clause. *See id.* at 207. Consequently, none

of the fraudulent transfer claims are arbitrable because neither the Trustee nor the creditors

agreed to arbitrate those claims. *See id.* at 198 (stating that the first factor to consider is whether

the parties agreed to arbitrate). In any event, the fraudulent transfer claims fall outside the scope

of the Arbitration Clause. Although that clause is broad, "even with a broad form clause, if the

claims present 'no questions in respect of the parties' right and obligations under [the

agreements],' they are outside the purview of the arbitration clause and are not arbitrable."

*Bethlehem*, 390 B.R. at 790. The fraudulent transfer claims do not "relate" to the APA, as they

were not "extant, not capable of being brought by the Debtor" at the time of the signing of the

APA. *Id.* at 793 (finding that a "broad" arbitration clause did not apply to preference claims

under section 547 of the Bankruptcy Code).

Finally, even if the Trustee had agreed to arbitrate the fraudulent transfer claims and

those disputes fell within the scope of the Arbitration Clause, the Court would nonetheless

exercise its discretion to deny arbitration on the basis that fraudulent transfer claims are

substantively core and that "arbitrating the dispute would severely conflict with relevant

provisions of the Bankruptcy Code." *Bethlehem*, 390 B.R. at 794 (finding that preference claims

were "core matters that are integral to a bankruptcy proceeding").  Even disregarding the

distinction between "procedurally" and "substantively" core, the resolution of the fraudulent

transfer claims will have "a significant impact on the administration of the estate."  *See In re MF*

*Glob. Holdings Ltd.*, 571 B.R. at 94.  The ability to bring avoidance actions is a quintessential

right of the Trustee under the Bankruptcy Code to recover assets for the benefit of creditors.

Therefore, the Court utilizes its discretion to determine that, even if the Arbitration Clause

applies to the fraudulent transfer claims, the fraudulent transfer claims should not be arbitrated.

Accordingly, the Court denies Urthbox's motion to arbitrate the Fraudulent Transfer Claims.

<u>Claim Disallowance under Section 502(d)—Count 5</u>

Section 502(d) of the Bankruptcy Code "requires a court to disallow an entity's claims

against the bankruptcy estate if the estate is entitled to recover property from the entity, such as

because of a voidable preference, but that entity has failed to first transfer this property back to

the bankruptcy estate."  *In re McClean Indus. Inc.*, 30 F.3d 385, 388 (2nd Cir. 1994).[15] In Count

5 of the Amended Complaint, the Trustee seeks to disallow Urthbox's claims against the estate,

to the extent it is a transferee of transfers avoidable under sections 544, 547, 548, and/or 549 of

the Bankruptcy Code "until such time as [Urthbox] pay[s] the amount equal to the aggregate

---

[15]    Section 502(d) states, as follows:

> (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of
> any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or
> that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549,
> or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such
> property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of
> this title.

11 U.S.C. § 502(d).

amount of all of the transfers plus interest thereupon." Am. Complt. ¶ 71. As an initial matter,

any recoveries asserted by the Trustee under this Claim for Relief are purely nascent, as Urthbox

has not filed a proof of claim in this case, and so there is no "claim" to disallow under section

502(d).  And of course, any disallowance under section 502(d) will only be appropriate if the

Trustee is successful under the Fraudulent Transfer Claims, which have yet to be litigated.

Regardless, for the same reasons as articulated above regarding the Fraudulent Transfers Claims,

the Count 5 claim is non-arbitrable as it is not a claim that the parties chose to arbitrate and not

covered by the Arbitration Clause - it is a creature of the Bankruptcy Code and therefore was

"neither extant, nor capable of being brought by the Debtor" at the time the APA was signed.

*See Bethlehem*, 390 B.R. at 793. And in any case, like the Fraudulent Transfer Claims, a claim

under section 502(d) of the Bankruptcy Code is substantively core and directly relates to the

administration of the estate.  *See id.* at 794-95. The Court denies Urthbox's motion to arbitrate

the alleged Claim Disallowance under Count 5.

<u>Breach of Contract – Count 8</u>

In Count 8, as an alternative to the Fraudulent Transfer Claims, the Trustee asserts a

claim for breach of contract against Urthbox. In support of the claim, the Trustee asserts that

under the APA, Urthbox promised to pay "$722,000 by way of distribution of the proceeds

Urthbox received from the fulfillment of [the Debtor's] orders" (Am. Complt. ¶ 22), but that the

Debtor "received not more than $196,000 on account of the APA." *Id.* ¶ 31. He also says that

Urthbox "promised to pay at least $780,000 to the Debtor on account of the Asset Sale in

addition to issuance of a convertible promissory note in the amount of $500,000." *Id.* ¶ 83.

Notwithstanding those promises, "Urthbox failed to honor the clear and unambiguous terms of

the APA by delivering the sums due to the Debtor thereupon." *Id*. ¶ 84.

25

The breach of contract claim plainly "arises under" and "relates to" the APA because it seeks to enforce the APA. It is derivative of the Debtor's rights against Urthbox under the APA and could have been pursued outside of bankruptcy. It is covered by the Arbitration Clause – which is binding on the Trustee. *See Bethlehem Steel*, 390 B.R. at 791. The claim also is arbitrable because "a breach of contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1102 (2d Cir. 1993); *see also In re Enron Corp.*, No. 01B16034, 2002 WL 32155353, at *2 (Bankr. S.D.N.Y. Mar. 19, 2002) (finding that "an action based on breach of contract that is brought by a debtor against a party to a pre-petition contract is non-core when its only effect on the administration of the estate is to augment the assets of the estate"). Moreover, the breach of contract claim "involve[s] disputes arising from the parties' pre-petition contractual relationship" and therefore, even if it was core, it would be core solely for procedural reasons." *Hagerstown*, 277 B.R. at 205. This is particularly true as Urthbox has not filed a proof of claim in this case.  *See S.W. Bach*, 425 B.R. at 97 (finding that certain unjust enrichment and restitution claims must be arbitrated when, among other things, the defendant had not filed a proof of claim). As such, the Court must refer Count 8 to arbitration. It has no discretion not to do so. *See In re Crysen/Montenay Energy Co.*, 226 F.3d at 166; *Hagerstown,* 277 B.R. at 200. The Court grants Urthbox's motion to arbitrate the breach of contract claims under Count 8, and stays the prosecution of Count 8 in the adversary proceeding.

In reaching this conclusion, the Court notes that the Trustee argues that causes of action against Urthbox that are not expressly based on chapter 5 powers (*e.g*., Counts 8 and 9) are core matters because they are all based on the fraudulent conveyance and transfer of assets from the Debtor to Urthbox, all of which depend on the same operative facts as the core claims (i.e., the

26

Fraudulent Transfer Claims) that are at the heart of the Amended Complaint. *See* Opposition ¶ 23. As support for that contention, the Trustee cites to *In re CBI Holding Co., Inc.*, 529 F.3d 432, 461-62 (2d Cir. 2008). The Court finds no merit to this argument. In *CBI Holding*, the Second Circuit agreed with the district court's determination that claims based in fraud, negligence, and breach of contract were core specifically because they were filed as counterclaims to a proof of claim and, as such, were core claims under 28 U.S.C. § 157(b)(2)(C), not because they arose out of the same operative facts as the core claim. *See CBI Holding*, 529 F.3d at 462. That rationale is inapplicable herein, as Urthbox has not filed a proof of claim. Moreover, the issue before the circuit was whether the bankruptcy court had constitutional authority to finally adjudicate a claim, not whether the claim at issue should be arbitrated. Here, the Court looks only at the narrow question of whether claims must be arbitrated, regardless of whether the Court can issue a final determination on any non-arbitrable claims—an issue that has not been raised by the parties. Accordingly, the Trustee misplaces his reliance on *CBI Holding*.

Unjust Enrichment – Count 9

As a further alternative to the Fraudulent Transfer Claims, in Count 9, the Trustee seeks damages from Urthbox based upon its alleged unjust enrichment. In support of that claim, he asserts that "as a result of the Asset Sale, Urthbox has unjustly taken the value and benefit of the Debtor's assets to the detriment of the Debtor and its creditors," and therefore has been "unjustly enriched at the expense of the Debtor's estate." Am. Complt. ¶¶ 87-88. The Trustee seeks damages equal to the "diminished value of Debtor's business (and its assets and proceeds) while it held and operated by Defendant Urthbox." *Id.* ¶ 89. Like the breach of contract claim, this claim could have been pursued outside of bankruptcy. The claim "arises under" and is "related to" the APA because it seeks damages based upon Urthbox's operation of the business

27

transferred pursuant to the APA. Thus, the Arbitration Clause is binding on the Trustee. *See S.W. Bach*, 425 B.R. at 97-98.

Courts generally find that state law claims for unjust enrichment that arise prepetition, like the one alleged in Count 9, are non-core. *See, e.g., In re JVJ Pharmacy Inc.*, 618 B.R. 408, 416 (Bankr. S.D.N.Y. 2020) (finding that an unjust enrichment claim arose under state laws before the bankruptcy case and was non-core); *In re Paragon Offshore PLC*, 598 B.R. 761, 768 (Bankr. D. Del. 2019 (finding that claim for unjust enrichment was non-core because it is not included on the "illustrative list" of core claims in 28 U.S.C. § 157(b), does not invoke a substantive right under the Bankruptcy Code, and does not only arise within a bankruptcy context.); *In re Great Lakes Comnet, Inc.*, 588 B.R. 1, 7 (Bankr. W.D. Mich. 2018) (holding that liquidating trust's claim for unjust enrichment was non-core because it arose under state law, did not comprise a claim that can arise solely in the context of a bankruptcy case and could have been pursued without the prerequisite of a bankruptcy filing.)[16]

*In re S.W. Bach & Co.*, is instructive. In that case, among other things, Judge Glenn considered whether an unjust enrichment claim that was brought in the alternative to a non-arbitrable fraudulent conveyance claim was a core claim. 425 B.R. at 97. While noting that some courts had found that unjust enrichment claims are core when they are "intimately intertwined" with core claims, Judge Glenn found that the unjust enrichment claim was non-core as it was derivative of the debtor's prepetition rights and could have been pursued outside of bankruptcy even if the necessary elements of the fraudulent transfer claim were not met. *See id.* at 97-98 (noting that the trustee could have brought the unjust enrichment claim prepetition "even if the

---

[16]   The Court notes that in *Caldor Corp. v. S. Plaza Assocs., L.P.,* 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998), this court held that a claim for unjust enrichment was a core claim, where the claim arose out of the same facts as a filed proof of claim. That case is distinguishable, because Urthbox has not filed a proof of claim herein.

transfers had not occurred within two years of the petition date, and the debtor was not

insolvent"). This was particularly true because, as in this case, the creditor did not file a proof of

claim and, as such, the unjust enrichment claim did not arise out of the same facts as a filed proof

of claim. *See id.* at 96-97 (noting that while some courts considered unjust enrichment claims to

be core when they "arose out of the same facts as the proof of claim," the defendant in *S.W. Bach*

(like Urthbox) had not filed a proof of claim). The Trustee's unjust enrichment claim represents a

separate and standalone theory of recovery, it is not simply duplicative of the other Claims for

Relief. *See id.* For instance, the relief that the Trustee seeks in Count 9 is broader than relief he

is seeking in the breach of contract claim, as that claim seeks performance under the APA, while

the unjust enrichment claim more broadly seeks recoveries for the "diminished value of Debtor's

business (and its assets and proceeds) while held and operated by Defendant Urthbox." Am.

Complt. ¶ 89. Further, as in *S.W. Bach*, while there is some overlap between the unjust

enrichment claim and the fraudulent transfer claims, the unjust enrichment claim is not

"intimately intertwined" with such claims, does not arise out of the same facts as a filed proof of

claim, and could have been brought by the Debtor prepetition. *See S.W.Bach*, 425 B.R. at 97-98.

Finally, as with Count 8, even if the unjust enrichment claim is core, it "involve[s] disputes

arising from the parties' pre-petition contractual relationship" and therefore would be core

"solely for procedural reasons." *Hagerstown*, 277 B.R. at 205. As a consequence, the Court

likely does not have the discretion to hear Count 9 and, in any case, declines to exercise any such

discretion. Therefore, the Court grants Urthbox's motion to arbitrate Count 9, and stays

continued prosecution of that claim in the adversary proceeding.

<u>Accounting and Turnover—Count 11</u>

The Trustee styles Count 11 as a claim against Urthbox for "Accounting and Turnover."

In support of that claim, the Trustee asserts that he is entitled to an accounting as to -

(i)     all of the assets, tangible and intangible, that were sold pursuant to the
        APA and all proceeds derived by the Debtor, the Defendants, or anyone
        else, pursuant to the APA; and

(ii)    all assets that were not sold pursuant to the APA, and all proceeds derived
        from all assets that remained with the Debtor after the Asset Sale.

Am. Complt. ¶¶ 97, 99, 100. He explains that "[t]his request for an accounting includes the

production of all supporting documents and communications related to these documents, and any

further disclosure that this Court deems appropriate." *Id.* ¶ 100. Thus, the Trustee seeks an order

directing Urthbox to provide (i) an accounting as to all assets sold and revenues received

pursuant to the Asset Sale and (ii) all assets not sold in the Asset Sale and retained by the Debtor

and all revenues received by the Debtor. *See* Am. Complt. at 16 Prayer For Relief, ¶ E. He also

seeks an order directing "a turnover to the Trustee of receipts paid to or received by the

Defendants on account of the Asset Sale." *Id.* ¶ F. In support of the Motion, Urthbox asserts that

all of the Claims for Relief are arbitrable. *See* Motion ¶ 64. However, in its Motion and Reply, it

does not address why it believes that the claims in Count 11 are arbitrable.

Section 542(a) states, as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than
a custodian, in possession, custody, or control, during the case, of property that
the trustee may use, sell, or lease under section 363 of this title, or that the debtor
may exempt under section 522 of this title, shall deliver to the trustee, and account
for, such property or the value of such property, unless such property is of
inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). "Under § 542, the sole recipient of the turnover is the trustee, the

representative of the estate." *See Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs.*), 272

B.R. 74, 97–98 (Bankr. S.D.N.Y. 2002).  Thus, notwithstanding that the APA may be read to

extend to a claim for an accounting and turnover, the Trustee cannot be deemed to have agreed to

arbitrate it.  "[T]he [T]rustee did not inherit the turnover claim from the [D]ebtor, or bring it as

statutory successor to the [D]ebtor. Like the fraudulent conveyance claims, the [T]rustee cannot

be deemed to have agreed to arbitrate it." *Hagerstown,* 277 B.R. at 209 ("[Turnover] is a creature

of bankruptcy law, and only the trustee may bring it.") Moreover, a turnover claim is core*. See*

28 U.S.C. § 157(b)(2)(E). As noted in *Hagerstown,* compelling arbitration of a chapter 7

trustee's turnover claim conflicts with important policies under the Bankruptcy Code that support

the trustee's function to marshal, liquidate and distribute estate assets to creditors holding

allowed claims. *See Hagerstown*, 277 B.R. at 210. Accordingly, even if Count 11 was subject to

the Arbitration Clause, the Court would not compel the Trustee to arbitrate the claim. The Court

denies Urthbox's motion to arbitrate the requests for Turnover and an Accounting in Count 11.

> Whether the Court Will Stay Prosecution of The
> <u>Non-Arbitrable Claims Pending Conclusion of the Arbitration</u>

Having determined that the Fraudulent Transfer Claims, and the claims underlying

Counts 5 and 11 are non-arbitrable, the Court considers whether to stay the litigation of those

non-arbitrable Claims for Relief in this Court until the conclusion of the arbitration. Non-

arbitrable claims are not subject to the mandatory stay required by section 3 of the FAA. *See*

*Hagerstown,* 277 B.R. at 199 n. 18 (citations omitted); *see also S.W. Bach*, 425 B.R. at 98 (citing

*Hagerstown*). The decision to stay non-arbitrable claims is "committed to the court's

discretion." *Hagerstown*, 277 B.R. at  99 (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815

F.2d 840, 856 (2d Cir. 1987)). The Court's power to grant such a stay follows from "the power

inherent in every court to control the disposition of the cases on its docket with economy of time

and effort for itself, for counsel, and for litigants." *Citrus Marketing Bd. of Israel v. J. Lauritzen*

31

*A/S*, 943 F.2d 220, 225 (2d Cir. 1991) (quoting *Landis v. North America Co.,* 299 U.S. 248, 254 (1936). A broad stay of the bankruptcy proceedings is appropriate if: (1) "the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit" or (2) "the stay will promote judicial economy, avoidance of confusion and possible inconsistent results without working an undue hardship or prejudice against the plaintiff." *Hagerstown*, 277 B.R. at 199 (internal quotation marks and citations omitted). A stay of bankruptcy court litigation in favor of an arbitration also may be appropriate "where there [are] common questions of fact among the non-arbitrable and arbitrable claims, or when the arbitration [is] likely to dispose of issues common to the claims of the arbitrating and non-arbitrating defendants." *S. W. Bach*, 425 B.R. at 98 (citing *Moore v. Interacciones Global, Inc*., No. 94 Civ. 4789(RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995)).

The arbitrable claims do not predominate this lawsuit. First and foremost, the Amended Complaint seeks to avoid and preserve the Transfers and recover the Acquired Assets or their value from Urthbox. Count 5 of the Amended Complaint seeks to disallow "any and all claims of the Defendants against the Debtor…until such time as the Defendants pay the amount equal to the aggregate amount of all the transfer plus interest thereupon," pursuant to section 502(d) of the Bankruptcy Code. *See* Am. Complt. ¶ 71. It is directly related to the Fraudulent Transfer Claims and does not have common questions of fact with the breach of contract and unjust enrichment claims underlying Counts 8 and 9. The claim has no merit. It is premature because Urthbox has not yet filed a proof of claim. *See Tronox Inc., et al. v. Anadarko Petroleum Corp. and Kerr–McGee Corp*. (*In re Tronox Inc*.), 429 B.R. 73, 109 (Bankr. S.D.N.Y. 2010) (dismissing a 502(d) claim as premature when the defendant had not filed a proof of claim); *see*

*also In re Geltzer*, 502 B.R. 760, 773 (Bankr. S.D.N.Y. 2013) (same).  Accordingly, the Court will not stay prosecution of Count 5.[17]

In Count 11, the Trustee seeks a judgment directing Urthbox to account for assets transferred and not transferred under the APA and to turnover estate property to the Trustee. *See* Am. Complt. ¶¶ 96-100. Staying the Trustee from prosecuting Count 11 will not promote judicial economy or prejudice Urthbox. The issuance of a stay would conflict with the Trustee's core obligation to marshal and liquidate the assets expeditiously and investigate and report on the financial affairs of the debtor. The Court will not stay prosecution of Count 11 of the Amended Complaint, pending completion of the arbitration of Counts 8 and 11.

*Hagerstown* is instructive in resolving whether to stay prosecution of the Fraudulent Transfer Claims. In that case, at their core, the claims at issue in the trustee's adversary proceeding were contractual in nature, as they related to the defendant's performance under an agreement (the "EPC Agreement") and resulting liability. *See Hagerstown,* 277 B.R. at 208. The trustee challenged the defendant's assertion that it had achieved certain milestones under the EPC Agreement and in his breach of contract claims, the trustee sought to avoid or disaffirm several agreements that resolved disputes relating to the defendant's performance and facilitated the apparent achievement of the milestones. *See id.* The court denied the defendant's motion to refer the trustee's fraudulent transfer claim to arbitration, but thereafter stayed prosecution of the fraudulent transfer claims pending completion of the arbitration. *See id.* In doing so, the court found that the fraudulent conveyance claims were directly connected to the contract disputes and presented alternative theories of disaffirmance of the EPC Agreement. It reasoned that if the

---

[17]    The Court will not consider disposing this claim absent a motion to dismiss the claim from Urthbox, or agreement among the Trustee and Urthbox to dismiss the claim.

trustee succeeded on his contract claims and was able to rescind the settlement agreements, he would not have to avoid them as constructive or actually fraudulent transfers. *See id.* The court also found that the arbitration and the fraudulent conveyance litigation shared common questions of fact. It noted that in the arbitration, the trustee would seek to prove the worth of his contract claims against the defendant without regard to the effect of the settlements he was trying to avoid, and the trustee's fraudulent conveyance allegations stated that the debtor did not receive "fair consideration" for those agreements. *See id.* The court found that the fairness of the consideration depended on the value of the contract claims that the debtor surrendered, which was the issue that the trustee would litigate in the arbitration. The court found that the arbitration could contribute to the resolution of the issues raised by the fraudulent conveyance claims. *See id.*

The Fraudulent Transfer Claims challenge the essence of the APA by seeking to avoid and preserve the Transfers under the APA and to recover the Acquired Assets, or value thereof as actual and constructively fraudulent transfers. Unlike *Hagerstown,* where the court found that the breach of contract and fraud claims overlapped and were intertwined with the fraudulent transfer claims, here there is no direct connection between the Fraudulent Transfer Claims not subject to arbitration, and the breach of contract (Count 8) and unjust enrichment (Count 9) claims that are subject to arbitration. First, the Trustee is not trying to rescind the APA in either Count 8 or Count 9. The Trustee can only obtain relief of that nature through the successful prosecution of the Fraudulent Transfer Claims and the avoidance of the Transfers at issue in the APA and recovery of the Acquired Assets. Moreover, central to the resolution of the constructive fraudulent conveyance claims will be a determination of whether the debtor paid "reasonably equivalent value" for the Acquired Assets. *See* Count 1 (*see* Am Complt. ¶¶ 40-47); Count 4 (*see*

34

*id.* ¶¶ 63-67); Count 6 (*see id.* ¶¶ 72-76); Count 7 (*see id.* ¶¶ 77-81). The adequacy of the

consideration paid under the APA is not at issue in either Counts 8 or 9. In Count 8, the Trustee

seeks damages based on Urthbox's alleged failure to pay the purchase price called for under the

APA. *See* Am. Complt. ¶¶ 82-85. Count 9 does not touch upon the adequacy of the consideration

paid for the Acquired Assets. Rather, the Trustee seeks to collect damages from Urthbox based

upon what it did with the Acquired Assets after it acquired them, as he bases his damage claim

on the "diminished value of the Debtor's business (and its assets and proceeds) while held and

operated by Urthbox." *Id.* ¶ 89.[18]   Thus, unlike *Hagerstown*, there are no common questions of

fact among the arbitrable and non-arbitrable claims and it is unlikely that the arbitration will

dispose of issues common to the claims of the arbitrating and non-arbitrating defendants.

Accordingly, the Court will not stay prosecution of the Fraudulent Transfer Claims pending

completion of the arbitration.

      The successful avoidance of a transfer under sections 548 and 544 nullifies the transfer

and the transferred property automatically becomes part of the estate. *Congress Credit Corp. v.*

*AJC Int'l*, 186 B.R. 555, 558 (D. P.R. 1995). Nonetheless, those provisions do not give the

trustee control over the transferred assets. The concepts of avoidance and recovery are distinct,

---

[18]     As noted, the APA is governed by California law. In California, the elements of unjust enrichment are: (i) receipt of a benefit; and (ii) unjust retention of the benefit at the expense of another. *Lectrodryer v. Seoul Bank*, 71 Cal App 4th 723, 726, 91 Cal. Reptr. 881 (2000).  *See also Leitner v. Sadhana Temple of New York, Inc.,* No. 13-07908, 2014 WL 12588645 (C.D. Cal. June 10, 2014). Under California law, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' " *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution, but there is also California case law holding that a plaintiff may not pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." *Sunpower Corp. v. Sunpower California, LLC,* 21-CV-375-CAB-MSB, 2021 WL 2781245 at *3 (S.D. Cal. July 2, 2021) (internal quotation marks and citations omitted). *See also Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996) (noting that "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.") It is not clear that the Trustee can demonstrate grounds to support his claim for unjust enrichment. That furthers the Court's conclusion that it will not stay prosecution of the fraudulent transfer claims.

and section 550(a) is intended to restore the estate to the financial condition it would have

enjoyed if the transfer had not occurred. *Hirsch v. Gersten* (*In re Centennial Textiles, Inc*.), 220

B.R. 165,  176 (Bankr. S.D.N.Y. 1998) (citations omitted). *See also Santee v. Northwest Nat'l*

*Bank, (In re Mako),* 127 B.R. 471, 473 (Bankr. E.D. Okla. 1991) ("[Section] 550(a) is a

secondary cause of action after a properly appointed representative has prevailed pursuant to the

avoidance sections of the Code. Section 550(a) stands as a recovery statute only and not as a

primary avoidance basis for an action, as it will only survive when coupled with the transfer

avoidance sections of the Code.") Under section 550, a trustee may recover the transferred

property itself or the value of the property. 11 U.S.C. § 550(a).[19] The Court has discretion

whether to order the Defendant to pay the value of the property or to award turnover the property

to the bankruptcy estate. *In re Centennial Textiles*, 220 B.R. 176-77 (stating that "the Bankruptcy

Code does not provide guidance on when the Court should order payment of the value of

property rather than order the return of property itself, it is within the Court's discretion to make

such a determination.") (citations omitted).

As noted, the Amended Complaint focuses on the Fraudulent Transfer Claims. The

Trustee pleads the breach of contract claim in Count 8 as an alternative ground for relief under

the Amended Complaint. *See* Am. Complt. ¶ 83-84 ("In the alternative, under the APA, Urthbox

was promised to pay at least $780,000 to the Debtor… but Urthbox failed to honor the clear and

unambiguous terms of the APA by delivering the sums due to the Debtor thereupon."). In

---

[19]     In part, section 550(a) states that

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section
> 544 . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property
> transferred, or, if the court so orders, the value of such property . . .

11 U.S.C. § 550(a).

seeking damages in Count 9 to remedy Urthbox's alleged unjust enrichment, the Trustee assumes that Urthbox is in possession of the Acquired Assets. *See id.* ¶ 89 ("The Trustee is entitled to recover on behalf of Debtor's estate damages for the diminished value of Debtor's business (and its assets and proceeds ) while held and operated by Defendant Urthbox.").  The successful prosecution of the Fraudulent Transfer Claims plainly will provide the Trustee with broader relief than he can obtain under Counts 8 and 9 and may very well moot those claims for relief and thereby obviate the need for arbitration.

Having determined not to stay the prosecution of the Fraudulent Transfer Claims, the Court considers whether it is appropriate to stay the arbitration of Counts 8 and 9 pending resolution of those claims. One of a chapter 7 trustee's duties under section 704 of the Bankruptcy Code is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. § 704(a)(1). *See also In re Balco Equities, Ltd., Inc.*, 323 B.R. 85, 97 (Bankr. S.D.N.Y. 2005) (The trustee has a "duty to realize the maximum return for the estate for further distribution to the Debtor's creditors."); *In re Pursuit Cap. Mgmt.,* LLC, 595 B.R. 631, 659 (Bankr. D. Del. 2018) ("Two primary goals of the Bankruptcy Code are to maximize the value of the estate for the benefit of creditors and to provide for the equality of treatment of creditors.").    In furtherance of those goals, "the trustee's core obligation [is] to marshal and liquidate the assets expeditiously . . . " *Hagerstown*, 277 B.R. at 210.  Section 105 of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes "enjoining proceedings in other forums against non-debtors." *S.W. Bach*, 425 B.R. at 98. If the Trustee must arbitrate the breach of contract and unjust enrichment claims underlying Counts 8

and 9, respectively, prior to, or concurrently with the litigation of the Fraudulent Transfer

Claims, the Trustee and Urthbox will be denied the opportunity to reduce the scope (and with it,

the cost) of litigation under the Amended Complaint. Staying the arbitration of the non-core

claims pending the Court's resolution of the Fraudulent Transfer Claims will not prejudice

Urthbox's defense of the Amended Complaint. It will enhance judicial economy and clearly

furthers the Trustee's adherence to the mandates of section 704 of the Bankruptcy Code.

Because section 105(a) injunctions are authorized by statute, they do not need to comply with the

traditional requirements of Fed. R. Civ. P. 65. *See In re Ionosphere Clubs, Inc.,* 111 B.R. 423,

431 (Bankr. S.D.N.Y. 1990); *see also In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y.1987). There is

no point in proceeding with an arbitration of claims that, upon the resolution of the Fraudulent

Transfer Claims, may be rendered moot or may be abandoned by the Trustee.

The case of *In re TP, Inc.*, No. 10-01594-8-SWH, 2013 WL 865982 (Bankr. E.D.N.C.

Mar. 7, 2013) is instructive. In that case the chapter 7 trustee sought to stay the arbitration of

non-core, arbitrable claims pending the bankruptcy court's resolution of core claims. 2013 WL

865982, at *1. [20] Among other things, the trustee argued that the successful prosecution of the

core claims would either offset or preclude the arbitrable claim by invalidating the agreements

upon which the claim was based. *See id.* at *2. The trustee contended that permitting the

arbitration to proceed would interfere with the court's ability to carry out the provisions of the

Bankruptcy Code and the trustee's efforts to efficiently administer the debtor's estate. *See id.*

The court agreed, stating

---

[20]    The bankruptcy court denied the defendants' motion to dismiss or alternatively stay the adversary proceeding
with respect to the core claims for fraud in the inducement, rescission, and equitable subordination. *See In re TP,
Inc.*, 2013 WL 865982, at *1. The court referred the non-core claim to arbitration in accord with the parties'
agreements. *See id.*

> [i]t is patently clear that the administration of the debtor's bankruptcy case cannot
> proceed efficiently and conclusively without resolution of the three core
> claims…[The] core claims must be resolved to determine [the creditor's] proof of
> claim, and  resolution of them aligns with one of the core purposes of bankruptcy,
> that is, to allow the bankruptcy court to centralize all disputes concerning property
> of the debtor's estate in the bankruptcy court so that reorganization can proceed
> efficiently unimpeded by uncoordinated proceedings in other arenas.

*Id.* at *3 (quotation marks and citations omitted). The court found that the "resolution of the core claims for rescission and fraudulent inducement potentially could either moot or completely obviate the agreements that support [the creditor's] arbitration demand in the first place. If so, there would be no arbitration at all." *Id.* In other words, the court concluded that compelling the arbitration of the non-core claims first, or simultaneously with the litigation of the core claims, would waste the potential for judicial economy and narrowing the scope of the issues in dispute. *See id.* Further, while ignoring the potential to reduce the scope of the litigation and economize the dispute would substantially prejudice the debtor, the creditor would suffer minimal prejudice if the non-core claims were merely stayed. *See id.* at *4.

Compelling the Trustee to arbitrate the non-core claims before the Court resolves the Fraudulent Transfer Claims conflicts with the mandates of section 704. For that reason, coupled with the fact that there is no prejudice to Urthbox if it arbitrates its claims (if at all) after the Court resolves the Fraudulent Transfer Claims, the Court stays the arbitration of Counts 8 and 9 pending resolution of the litigation of the Fraudulent Transfer Claims.

> Whether The Fraudulent Transfer Claims
> <u>State Claims For Relief Against Urthbox</u>

Having determined that it will not stay prosecution of the non-arbitrable Fraudulent Transfer Claims, the Court considers whether to dismiss those claims pursuant to Rule

39

12(b)(6).[21] In Counts 1 and 3 of the Amended Complaint, the Trustee seeks to avoid and preserve the Transfers as actual fraudulent transfers under sections 544(b), 548 and 550 of the Bankruptcy Code, and to recover the Acquired Assets, or the value of those assets under section 550 of the Bankruptcy Code. These Counts are premised upon actual fraud. *See* Am. Complt. ¶ 41 (Count 1—"The transfers discussed above, were done with the actual intent to hinder, delay or defraud the Debtor's estate and its creditors."), ¶ 60 (Count 3—"Vorotova and Foult caused the Debtor to enter into the APA and directed the Debtor with the actual intent to hinder, delay, or defraud the Debtor's creditors."). Urthbox contends that the Court must dismiss these Counts because the Trustee fails to allege any facts showing the required intent, or the customary "badges of fraud" as an alternative means to satisfy the heightened pleading requirement. *See* Motion ¶¶ 39-46. In response, the Trustee argues that the Amended Complaint adequately pleads actual fraud when it details: (1) the "suspicious" timing of the APA, which was made less than three months after the receipt of new equity investments in the amount of $865,707.95; (2) that at the time of the Asset Sale the Debtor had received a total of $1.2 million in advance prepaid subscriptions and had sales of nearly $1 million per month; and (3) the inadequacy of the consideration received from Urthbox, including that Urthbox did not pay the total purchase price, and that the convertible promissory note was overtly fraudulent in that it promised a return of value to investors of the Debtor while leaving creditors with nothing but claims against a shell entity. *See* Opposition ¶ 20 (citing Am. Complt. ¶¶ 16-36).

---

[21]    Urthbox also moved to dismiss Counts 8 and 9 under Rule 12(b)(6) but, as discussed above, such claims are subject to mandatory arbitration and therefore the Court does not reach the Rule 12(b)(6) issues. In addition, the Court has found that Count 11 for turnover and accounting is non-arbitrable and therefore properly before this Court, but Urthbox has not moved to dismiss that Claim for Relief.

Allegations of actual fraud must meet the stricter pleading requirements of Rule 9(b), requiring a party to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). *See also Official Comm. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp.* (*In re Verestar, Inc.*), 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006) (holding that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake). However, "[m]alice, intent knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Further, "courts take a more liberal approach when construing allegations of actual fraud pled by a trustee, because a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *In re Geltzer*, 502 B.R. 760, 769 (Bankr. S.D.N.Y. 2013) (citation omitted); *see also Pereira v. Grecogas Ltd., et al.* (*In re Saba Enters., Inc.*), 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009).

Given the difficulty of proving actual intent, a plaintiff may alternatively plead "badges of fraud" that give rise to an inference of intent. *See Sharp Int'l Corp. v. State Street Bank and Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005). Common badges of fraud include: "(1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) a questionable transfer not in the usual course of business; and (8) the secrecy, haste, or unusualness of the transaction." *Silverman v. Actrade Capital, Inc.* (*In re Actrade Fin. Technologies Ltd.*), 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005).

41

Under the Bankruptcy Code, the trustee must show such intent on the part of the

debtor-transferor, not the transferee.  11 U.S.C. § 548(a)(1)(A) (requiring a showing by the

trustee that "the debtor…made such transfer…with actual intent to hinder, delay, or defraud.");

*see also Andrew Velez Const., Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 373 B.R. 262, 269

(Bankr. S.D.N.Y. 2007).  The result is no different under New York law.  *See In re Dreier LLP*,

452 B.R. 391, 432-33 (Bankr. S.D.N.Y. 2011) (concluding that only the intent of the transferor

must be shown in an actual fraudulent transfer action under NYDCL § 276, and that caselaw to

the contrary was either dicta or misguided).[22]  "[T]o state an actual fraudulent transfer claim with

---

[22]    It is settled that "bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state." *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 601-02 (2d Cir. 2001); *see also In re PSINet, Inc.*, 268 B.R. 358, 376 (Bankr. S.D.N.Y. 2001) ("Where, as here, this Court's subject matter jurisdiction is based on 28 U.S.C. § 1334, the Court applies, with respect to matters of state law, the conflict of law principles of the forum state, i.e., the State of New York."). Fraudulent transfer actions do not implicate federal policy concerns. *See Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 351 B.R. 32, 50 n.22 (Bankr. S.D.N.Y. 2006) (implicitly holding that fraudulent transfer actions at issue did not implicate federal policy concerns); *see also Terry v. Walker*, No. 3:04CV00064, 2006 U.S. Dist. LEXIS 24076, at *8 (W.D. Va. March 23, 2006) (holding fraudulent transfer action does not present federal interest sufficiently compelling to justify federal choice of law rules). It follows that the Court will apply New York's choice of law analysis. For that purpose, a fraudulent conveyance is considered to be a tort. *See Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 136 F.3d 213, 219 (2d Cir. 2013) (noting that "[t]he parties [did] not dispute that a fraudulent conveyance is a tort") (citation omitted); *see also RCA Corp. v. Tucker*, 696 F. Supp. 845, 854 (E.D.N.Y. 1988) ("[W]hether the assignment of the ... note may be avoided as a fraud on New York creditors-should be characterized as a tort for purposes of selecting the appropriate New York conflict of laws principles."); *Hassett v. Far West Federal Savings and Loan Assoc. (In re O.P.M Leasing Services, Inc.)*, 40 B.R. 380, 391-95 (Bankr. S.D.N.Y.) (deeming a fraudulent conveyance a tort in selecting applicable conflict of law principles), *aff'd on other grounds*, 44 B.R. 1023 (S.D.N.Y. 1984). New York applies an "interest analysis" test in determining the choice of law for tort claims. *See Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (N.Y. 1985) (noting that the "[i]nterest analysis [is] the relevant analytical approach to choice of law in tort actions in New York."); *see also Arochem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) ("In tort actions, New York applies a so-called interest analysis.") (citation omitted). Under that analysis, "the law of the jurisdiction having the greatest interest in the litigation will be applied[.]" *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (quoting *Intercontinental Planning, Ltd v. Daystrom, Inc.*, 24 N.Y.2d 372 (N.Y. 1969)). The factors relevant to such an analysis "are the nature of the legal issue in conflict, the policy or purpose supporting the provision in conflict, and an examination of the contacts of the competing jurisdictions to determine which jurisdiction has the greatest concern with the specific issue in question." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd*, No. 94 Civ. 5620, 1999 WL 64283, *5 (S.D.N.Y. Feb. 8, 1999) (citation omitted). "As part of interest analysis, the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation. Generally, when the laws in conflict are conduct regulating, the law of the locus jurisdiction applies." *Arochem Int'l, Inc. v. Buirkle*, 968 F.2d at 270 (citing *Schultz*, 65 N.Y.2d at 189). *See also Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."). For these purposes, "[a] fraudulent conveyance statute is conduct regulating rather than loss allocating."

42

Rule 9(b) particularity, a party must ordinarily allege: (i) the property that was conveyed; (ii) the

timing and, if applicable, frequency of the transfer; and (iii) the consideration (if any) paid for

the transfer. . . . In addition to specifically identifying the transfers to be avoided, a party must

also sufficiently plead the element of fraudulent intent required by Rule 9(b)." *O'Connell v.*

*Penson Fin. Services, Inc.* (*In re Arbco Capital Mgmt., LLP*), 498 B.R. 32, 40–41 (Bankr.

S.D.N.Y. 2013).

The party asserting an intentional fraudulent transfer claim must "specify the property

that was allegedly conveyed, the timing and frequency of those allegedly fraudulent

conveyances, [and] the consideration paid." *United Feature Syndicate, Inc. v. Miller Features*

*Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); *accord Flannigan v. Vulcan Power*

*Grp., L.L.C.*, 712 F. Supp. 2d 63, 67 (S.D.N.Y. 2010); *Adelphia Recovery Tr. v. Bank of Am.,*

*N.A.*, 624 F. Supp. 2d 292, 336 (S.D.N.Y. 2009). The Amended Complaint identifies the

Acquired Assets as the property that is the subject of the alleged fraudulent transfer under the

APA. *See* Am. Complt. ¶¶ 15-22 (identifying various assets of the Debtor, and alleging the APA

resulted in the "assignment of substantially all of the assets of the Debtor"). The complaint

alleges the timing of the transfer. *See id.* ¶ 15 (discussing the Debtor's revenue in the year prior

to the APA); ¶¶ 18-20 (addressing the status of the Debtor's financial condition and equity

investments three months prior to the APA). The Trustee then goes on to describe the allegedly

---

*GFL Advantage Fund, Ltd. v. Colkitt*, No. 03 Civ. 1256, 2003 WL 21459716, at *3 (S.D.N.Y.) (citing *Comer v. Titan Tool, Inc.*, 875 F. Supp. 255, 259 (S.D.N.Y. 1995)), order amended on reconsideration, No. 03 CIV.1256 JSM, 2003 WL 21556935 (S.D.N.Y. July 10, 2003). The law of the jurisdiction with the most significant contacts to the relevant transfers and relevant parties applies to a state constructive fraudulent transfer claim brought under § 544(b) of the Bankruptcy Code. *See In re WorldCom, Inc.*, No. 02-13522, 2003 WL 23861928, at *41 (Bankr. S.D.N.Y. Oct. 31, 2003). Contacts to be considered include the domicile, residence, place of incorporation and place of business of the parties; the place of injury; and the place of injury-causing conduct. *See id.* (citing Restatement (Second) of Conflicts of Laws § 145). The Trustee and Urthbox apply New York law to the Fraudulent Transfer Claims predicated on state law. The Court is not aware of any grounds for disturbing their choice of law. The Court will apply New York law to the Fraudulent Transfer Claims predicated on state law.

inadequate consideration agreed to by the parties under the APA.  *See id.* ¶¶ 22-25 (alleging

Urthbox would provide $722,000 via distribution proceeds from the fulfillment of the Debtor's

orders, in consideration for "substantially all of the assets of the Debtor" as well as securities in

the amount of $500,000 to "the current investors" of the Debtor).

Liberally construing the allegations in the Amended Complaint regarding the Debtor's

intent, the Court finds that the Trustee adequately alleges certain "badges of fraud," and thus

satisfies the heightened standard for pleading required by Rule 9(b). As one example, the Trustee

asserts the Debtor did not receive consideration reasonably equivalent to the value of the

transfers.  *See, e.g., id*. ¶ 32 (alleging the value of the Debtor's assets exceeded the offered

consideration).  The Amended Complaint describes how a portion of the consideration paid by

Urthbox was generated by clients and orders originated by the Debtor prior to the APA, and

therefore was not true consideration.  *See id*. ¶ 34 (alleging that the consideration paid by

Urthbox "was generated from clients that belonged to the Debtor," and therefore held no value to

the Debtor).  Further, the chronology of the events leading up to and following the transaction, if

proven true, likewise raises the specter of actual fraud.  For instance, the Trustee alleges that the

transaction took place less than three months following the receipt of new equity investments in

the amount of $865,707.95 and while customer revenue and sales were in excess of $1 million

per month.  *See id.* ¶¶ 16-20.  Further, and while by no means conclusive, the Trustee also

alleges that Urthbox listed the Acquired Assets for sale a little over a year from the time of the

APA at the price of $1,595,000.  *See id.* ¶ 38.  While the Trustee does not allege that the

Acquired Assets were sold at this price, and Urthbox notes in its Motion that they did not receive

any interest from potential buyers, it is at least instructive of the valuation that Urthbox placed on

the Acquired Assets, despite having allegedly paid only approximately $197,000 for such assets

one year earlier.  *See* Motion ¶ 36.  Therefore, the Court finds that the Amended Complaint

meets the pleading standard under Rule 9(b) and denies Urthbox's Motion to dismiss Counts 1

and 3.

Counts 4, 6 and 7 are claims for the recovery of constructive fraudulent transfers.  As

noted by Urthbox, all such counts require the common allegation "of lack of fair consideration."

*See* Motion ¶ 47.  In particular, Urthbox argues that the Amended Complaint fails to "provide a

valuation for the [Acquired Assets] in order to determine if the terms of the APA provided

reasonably equivalent value for the [Acquired Assets]."  *Id.* ¶ 24; *see also id.* ¶ 48 (arguing that

the Amended Complaint failed to allege any lack of fair consideration, and therefore the

constructive fraudulent transfer claims should be dismissed).  In response, the Trustee argues that

the "[Amended] Complaint makes clear there could not possibly be fair consideration as the

Trustee alleges that Urthbox effectively paid the Debtor with its own assets and then refused to

even pay sums provided in the APA."  Opposition at ¶ 17.

A constructive fraudulent transfer claim made under section 548(a)(1)(B) of the

Bankruptcy Code requires a showing that: (1) the debtor transferred an interest in property; (2)

the debtor (a) was insolvent at the time of the transfer or became insolvent as a result of the

transfer, (b) was engaged in business or was about to engage in business for which the debtor's

remaining property constituted unreasonably small capital; or (c) intended to incur or believed

that it would incur debts beyond its ability to pay as they matured; and (3) the debtor received

less than reasonably equivalent value in exchange for such transfer.  *See In re Hydrogen, LLC,*

431 B.R. 337, 352-53 (Bankr. S.D.N.Y. 2010) (citing *In re M. Fabrikant & Sons, Inc.*, 394 B.R.

721, 735 (Bankr. S.D.N.Y. 2008).

In comparison, state constructive fraudulent transfer claims, tendered under section 544(b), and applying New York law, require a showing that: (1) the transfer was made without fair consideration; and (2) either (a) the debtor was insolvent or was rendered insolvent by the transfer, (b) the debtor was left with unreasonably small capital, or (c) the debtor intended or believed that it would incur debts beyond its ability to pay as the debts matured. *In re M. Fabrikant & Sons, Inc*., 394 B.R. at 734 (citing N.Y. Debt. & Cred. §§ 273–75).  The heightened pleading requirements of Rule 9(b) are not applicable to constructive fraudulent conveyance actions, whether they are asserted under the Bankruptcy Code or applicable state law.  *See In re Trinsum Group, Inc*., 460 B.R. 379, 386–87 (Bankr. S.D.N.Y. 2011).  Rather, such claims are subject to the more liberal pleading standard found under Rule 8(a)(2).

The Court finds that the Complaint adequately alleges that there was insufficient consideration tendered by Urthbox to the Debtor in connection with the Asset Sale.  Although Urthbox complains that the Trustee did not provide a valuation for the Acquired Assets, the Court will not impose such a requirement upon the Trustee to survive a motion to dismiss (although a valuation may eventually prove necessary for a final determination of the Claims for Relief).  Rather, the Trustee must merely "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted).  Here, the Trustee has alleged that Urthbox has not even paid the full consideration due under the APA, and in any case such consideration was comprised of proceeds from orders the Debtor entered into prior to the execution of the APA. *See* Opposition ¶ 17. *See also* Am. Complt. ¶¶ 24, 59.  As such, the Trustee argues that such monies could not constitute fair or adequate consideration for the transfer of substantially all the Debtor's assets. *See* Opposition ¶ 17.  As discussed above with respect to the allegations of an actual fraudulent transfer, the Trustee has also alleged that the Debtor received $865,707.95 in

new equity investments only three months before effectively selling all of its assets for

approximately $197,000.  This allegation also supports the Trustee's allegation that the Debtor

did not receive adequate consideration for the sale under the APA.  Therefore, the Trustee has

sufficiently alleged the lack of fair consideration paid by Urthbox for the assets of the Debtor

under the APA, and has thereby met the applicable pleading standard set by Rule 8(a)(2).

Accordingly, the Court denies Urthbox's Motion to dismiss Counts 4, 6 and 7.

<u>**Conclusion**</u>

Based on the foregoing, the Court resolves the Motion, as follows:

Denies the Motion to the extent it seeks to dismiss the Amended Complaint in its entirety pursuant to the FAA and/or Rule 12(b)(6).

Grants the Motion to the extent it seeks to enforce the Arbitration Clause and compel the arbitration of Counts 8 and 9 of the Amended Complaint and stays the prosecution of those claims in the adversary proceeding pending resolution of the arbitration but denies the Motion to arbitrate the Fraudulent Transfer Claims and Counts 5 and 11 of the Amended Complaint.

Denies the Motion to the extent that it seeks to stay prosecution of the non-arbitrable Claims for Relief in the adversary proceeding pending resolution of the arbitration of Counts 8 and 9, and, pursuant to section 105 of the Bankruptcy Code, stays the arbitration of Counts 8 and 9, pending the Court's disposition of the Fraudulent Transfer Claims.

Denies the Motion to the extent it seeks to dismiss the Fraudulent Transfer Claims pursuant to Rule 12(b)(6).

IT IS SO ORDERED.

Dated: August 9, 2021
New York, New York

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge