**UNITED STATES BANKRUPTCY COURT**　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
```
*In re:*　　　　　　　　　　　　　　　　:　　Chapter 7

　　　　Try the World, Inc.,　　　　　　　　:　　Case No. 18-11764 (JLG)

　　　　　　　Debtor.　　　　　　　　　　:

```
------------------------------------------------------- x
```
John S. Pereira, as Chapter 7 Trustee of the　:
Estate of Try the World, Inc.,　　　　　　　:

　　　　　　　Plaintiff,　　　　　　　　　:

　　v.　　　　　　　　　　　　　　　　　:　　Adv. P. No. 20-01013 (JLG)

Urthbox Inc., Katerina Vorotova, David　　　:
Emmanuel Foult, and John Does 1, 2, 3,　　　:

　　　　　　　Defendants.　　　　　　　　:

```
------------------------------------------------------- x
```
Urthbox Inc.,　　　　　　　　　　　　　:

　　　　　　Counter-Plaintiff,　　　　　　:

　　v.　　　　　　　　　　　　　　　　　:

Try the World., Inc.,　　　　　　　　　　　:

　　　　　　Counter-Defendant.　　　　　　:

```
-------------------------------------------------------x
```

**MEMORANDUM DECISION AND ORDER DENYING URTHBOX'S MOTION
FOR A DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, DISMISSING
THIS ACTION FOR FAILURE TO PROSECUTE AND STRIKING THE
<u>ANSWER TO ITS COUNTERCLAIM</u>**

<u>**A P P E A R A N C E S**</u>:

THE LAW OFFICES OF THEODORE GEIGER, PLLC
*Counsel to Urthbox, Inc.*
477 Madison Avenue, 6th Floor
New York, New York 10022
By:    Theodore S. Geiger

MEDINA LAW FIRM LLC
*Counsel to the Chapter 7 Trustee John S. Pereira*
641 Lexington Avenue, 13th Floor
New York, New York 10022
By:    Eric S. Medina

**<u>HON. JAMES L. GARRITY, JR.</u>**
**<u>U.S. BANKRUPTCY JUDGE</u>**

### <u>Introduction</u>[1]

    In this adversary proceeding, John S. Pereira, the chapter 7 trustee (the "Trustee") of the estate of Try the World, Inc ("TTW or the "Debtor"), the chapter 7 debtor herein, has sued Urthbox LLC ("Urthbox"), David Emmanuel Foult ("Foult") and Katerina Vorotova ("Vorotova"), the Debtor's former directors, and others to avoid and recover transfers of the Debtor's assets under that certain Asset Purchase Agreement between TTW and Urthbox as fraudulent transfers under state and federal law.  Urthbox timely filed the Urthbox Answer to the Amended Complaint, which included a Counterclaim seeking damages from the Debtor's estate and as a setoff against any damages awarded under the Amended Complaint against Urthbox.  Urthbox did not file a proof of claim in this chapter 7 case.  The Trustee filed the Trustee's Answer to the Counterclaim fifteen months late, without leave of the Court.

---

[1]    Capitalized terms used, but not defined, in the Introduction have the meanings ascribed to them herein.

The matter before the Court is Urthbox's motion (the "Urthbox Motion")[2] for the entry of a default judgment against the Trustee on the Counterclaim pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "Federal Rules"),[3] or in the alternative, the entry of an order dismissing the Amended Complaint for failure to prosecute pursuant to Federal Rule 41(b),[4] and an order striking the Trustee's Answer to the Counterclaim pursuant to Federal Rule 12(a).[5] The Trustee filed an objection (the "Objection")[6] to the Urthbox Motion, supported by the declaration of his counsel, Eric S. Medina, Esq. (the "Medina Declaration").[7] Urthbox filed a reply (the "Reply")[8] in further support of the Urthbox Motion.

At the May 9, 2023 status conference in this adversary proceeding, the Court granted the parties leave to supplement their pleadings on or before June 1, 2023.[9] At the parties' requests, the Court extended that deadline twice, ultimately to June 30, 2023.[10] That day, Urthbox submitted

---

[2]   *Urthbox, Inc.'s Memorandum of Law in Support of Its Motion for a Default Judgment or, in the Alternative, Dismissing this Action for Failure to Prosecute and Striking the Answer to its Counterclaims*, AP ECF No. 58. References to "AP ECF No. __" are to documents filed on the electronic docket in the Adversary Proceeding, Case No. 20-01013. References to "ECF No. __" are to documents filed on the electronic docket in the main bankruptcy proceeding, Case No. 18-11764.

[3]   Federal Rule 55 is made applicable herein by Rule 7055 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[4]   With an irrelevant exception, Federal Rule 41 is made applicable herein by Bankruptcy Rule 7041.

[5]   Federal Rule 12 is made applicable herein by Bankruptcy Rule 7012.

[6]   *Chapter 7 Trustee's Objection to Motion of Urthbox, Inc. for Judgment by Default and for Dismissal*, AP ECF No. 59.

[7]   *Declaration in Connection with Trustee's Objection to Motion by Urthbox Inc. for Dismissal*, AP ECF No. 60.

[8]   *Urthbox, Inc's Reply Memorandum of Law in Further Support of Its Motion for a Default Judgment or, in the Alternative, Dismissing this Action for Failure to Prosecute and Striking the Answer to its Counterclaims*, AP ECF No. 61.

[9]   *Minutes of Proceedings, May 9, 2023*, AP ECF No. 62.

[10]   *Memorandum Endorsed Order, May 30, 2023*, AP ECF No. 64; *Memorandum Endorsed Order, June 28, 2023*, AP ECF No. 70.

the declaration of Ben Behrouzi, its Chief Executive Officer (the "Behrouzi Declaration"),[11] in support of the Urthbox Motion, and the Trustee filed a supplemental objection to the Urthbox Motion,[12] including the second declaration of Eric Medina (the "Second Medina Declaration").[13] On August 15, 2023, the Court heard arguments on the Urthbox Motion.

For the reasons set forth herein, the Court sustains the Objection and denies the Urthbox Motion.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

On June 9, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code ("the Bankruptcy Code") in this Court.[14] As of the Petition Date, Foult and Vorotova were the Debtor's principal shareholders and served as the Debtor's directors. On June 11, 2018, John S. Pereira was appointed as chapter 7 trustee of the Debtor's estate and continues to serve in that capacity.[15] On October 16, 2018, the Clerk of the Court filed a notice of possible dividends and set the claims bar date as January 18, 2019.[16]

---

[11]    *Declaration of Ben Behrouzi*, AP ECF No. 71.

[12]    *Chapter 7 Trustee's Supplement Objection to the Motion Filed by Urthbox, Inc. for Judgment by Default and/or Dismissal*, AP ECF No. 72

[13]    *Declaration Made in Connection with Trustee's Supplement to Objection to Motion of Urthbox Inc. for Dismissal*, AP ECF No. 73.

[14]    *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[15]    Docket Entry for June 11, 2018, *In re Try the World, Inc.*, No.18-11764, (Bankr. S.D.N.Y. filed June 6, 2018)

[16]    *Notice of Possible Payment of Dividends and of Last Date to File Claims*, ECF No. 13.

The Debtor formerly operated a subscription-based, as well as a "one-time purchase," snack food box delivery service.  Urthbox is a snack subscription company.  Less than one year prior to the Petition Date, pursuant to that certain Asset Purchase Agreement dated September 30, 2017 (the "APA"), the Debtor sold substantially all its assets (the "Acquired Assets") to Urthbox (the "Asset Sale").  The Trustee contends that the APA was structured to defraud the Debtor's creditors.  In his Amended Complaint,[17] as it relates to Urthbox, the Trustee seeks to avoid and preserve the transfers of the Acquired Assets under the APA as fraudulent transfers, and to recover the Acquired Assets or their value from Urthbox.  Alternatively, he seeks to recover damages occasioned by Urthbox's alleged breach of the APA, and its alleged unjust enrichment through its use of the Acquired Assets after the APA closed.  The Trustee also seeks an accounting from Urthbox.[18]

On September 30, 2020, Foult and Vorotova filed a joint answer to the Amended Complaint.  On August 30, 2021, after the Court denied Urthbox's motion to dismiss the Amended Complaint,[19] Urthbox timely served and filed its answer to the complaint (the "Urthbox Answer"),

---

[17]  *First Amended Complaint*, AP ECF No. 18.

[18]  The Amended Complaint includes the following claims against Urthbox: (i) Count One—Avoidance of Fraudulent Transfers pursuant to sections 544(b) and 551 of the Bankruptcy Code, Amended Complaint ¶¶ 40–47; (ii) Count Three—Avoidance of Fraudulent Transfers pursuant to sections 548, 550 and 551 of the Bankruptcy Code, *id.* ¶¶ 57–62; (iii) Count Four—Avoidance and Recovery of Constructive Fraudulent Transfers pursuant to section 548 and 550 of the Bankruptcy Code, *id.* ¶¶ 63–67; (iv) Count Five—Disallowance of Claims pursuant to section 502(d) of the Bankruptcy Code, *id.* ¶¶ 68–71; (v) Count Six—Avoidance and Recovery of Voidable Transfers pursuant to section 544(b)(1) and 550 of the Bankruptcy Code and sections 271–73, section 278 of the New York Debtor & Creditor Law, *id.* ¶¶ 72–76; (vi) Count Seven—Avoidance and Preservation of the Transfer of the Debtor's Assets pursuant to section 274 of the New York Debtor and Creditor Law, *id.* ¶¶ 77–81; (vii) Count Eight—Breach of Contract, *id.* ¶¶ 82–85; (viii) Count Nine—Unjust Enrichment, *id.* ¶¶ 86–89; and (ix) Count Eleven—Accounting and Turnover, *id.* ¶¶ 96-100.

[19]  *Defendant's Motion and Incorporated Points of Law to Dismiss the Complaint or Compel Arbitration and Stay the Complaint in Lieu of an Answer*, AP ECF No. 25; *Memorandum Decision and Order Resolving Motion by Urthbox to Dismiss Complaint or Compel Arbitration and Stay the Complaint in Lieu of an Answer*, AP ECF No. 42.

including a six-count counterclaim (the "Counterclaim")[20] against the Debtor. Behrouzi Declaration ¶ 3. As support for its Counterclaim, Urthbox contends that it "entered into an arms-length agreement with TTW on what it thought would be mutually beneficial terms," but soon discovered that "[r]ather than purchasing a set of satisfied customers served by a strong core of vendors and suppliers, [it] found itself saddled with undisclosed debts and assets that had been grossly mismanaged." Counterclaim ¶ 1. Urthbox asserts that it "wound up having to pay far more than anticipated to salvage the assets purchased from TTW," and that in the Counterclaim, it "seeks recompense, both directly and in the form of a setoff against any amounts it allegedly owes to TTW's estate." *Id.* Urthbox maintains that as a consequence of TTW's alleged wrongdoing, thus far, it has incurred damages of at least $1,817,323. *Id.* ¶ 38. In the six counts it alleges in support of the Counterclaim, Urthbox asserts claims against TTW for: (i) fraudulent misrepresentation, *id.* ¶¶ 41–47; (ii) negligent misrepresentation, *id.* ¶¶ 48–53; (iii) fraudulent inducement, *id.* ¶¶ 54–60; (iv) breach of contract, *id.* ¶¶ 61–65; (v) contractual indemnification, *id.* ¶¶ 66–70; and (vi) setoff pursuant to 11 U.S.C. § 553(a) and Cal Code Civ. Proc., § 431.70, *id.* ¶¶ 71–75.

In support of his Amended Complaint, the Trustee asserts claims for deepening insolvency against Foult and Vorotova. Amended Complaint ¶ 32; *see also* Medina Declaration ¶ 4. The Trustee says that for strategic purposes, in prosecuting the claims in the Amended Complaint, he placed particular importance on obtaining an understanding of Foult's and Vorotova's culpability for the claims asserted against them, prior to engaging in substantive discovery with Urthbox. *See* Objection at 11. On July 21, 2022, the Trustee filed a motion to approve a settlement with Foult,

---

[20] *Answer of Urthbox, Inc. to First Amended Complaint and Counterclaim Against Debtor*, AP ECF No. 46.

that resolved the estate's preference claims against him.[21]  By order dated September 6, 2022, the Court granted the motion and approved the settlement agreement.[22]

As of October 26, 2022, approximately fourteen months after Urthbox filed its Counterclaim, the Trustee had not responded to the Counterclaim.  That day, the Trustee propounded his Request for Production of Documents and his Request for Answers to Interrogatories (the "Discovery Requests") to Urthbox.  Medina Declaration ¶ 4.  Urthbox made several requests to the Trustee for additional time to respond to the Discovery Requests, so that it could "pull together" documents which were responsive to the requests.  *Id.*  It is undisputed that in those communications, Urthbox did not raise the fact that the Trustee had not then responded to the Counterclaim.  Objection ¶ 19.  On December 16, 2022, Urthbox responded to the Discovery Requests.  The Trustee says that Urthbox "produc[ed] no documents or substantive answers" to those requests.  *Id.*  In the December 16 response, Urthbox advised the Trustee that it had not responded to the Counterclaim and that it would not respond to the Discovery Requests because the Trustee had failed to prosecute his claims against Urthbox.

Trustee's counsel maintains that he "was not aware of the Counterclaim when it was filed nor was [he] informed by any person of the existence of a Counterclaim until counsel for Urthbox transmitted responses to discovery requests on December 16, 2022 . . . which referenced an 'unanswered' 'counterclaim.'"  Medina Declaration ¶ 3.  Trustee's counsel does not deny that he was served with the Counterclaim, but explains that "before, during and after the time of the Counterclaim and for several months [he] was routinely out of office attending to a [serious health-

---

[21]   *Trustee's Motion for Entry of an Order Approving Compromise Under Rule 9019*, AP ECF No. 47.

[22]   *Order Granting Trustee's Motion for Entry of an Order Approving Compromise Under Rule 9019*, AP ECF No. 50.

related] family matter." *Id.*  Trustee's counsel concedes that he had assistance from other counsel in his office in monitoring this adversary proceeding, but inexplicably, he was not informed of the Counterclaim.[23]  Counsel says that immediately upon receiving Urthbox's notice on December 16, 2022, he sought to meet and confer with Urthbox's counsel regarding the discovery dispute.  *Id.* ¶ 4.  That meeting occurred on December 19, 2022.  *Id.*  The parties did not resolve the dispute.

Pursuant to Rule 7012(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),[24] the Trustee's answer to the Counterclaim was due on September 20, 2021.   On December 30, 2022, without seeking leave of the Court, the Trustee filed his answer to the Counterclaim (the "Trustee's Answer"),[25] approximately fifteen months late.

By letter to the Court dated March 1, 2023 (the "Trustee Letter"),[26] Trustee's counsel requested, pursuant to Local Rule 7007-1(b) and the Court's Chambers' Rules, that the Court schedule a discovery conference to address Urthbox's allegedly defective responses to: (i) the Trustee's Request for Production of Documents dated October 26, 2022 and; (ii) the Trustee's Request for Answers to Interrogatories dated October 26, 2022.  The Court scheduled a discovery conference on March 16, 2023, and directed Urthbox to respond to the Trustee Letter on or before March 13, 2023.[27]

---

[23]   Mr. Medina did not address the issue in either of his declarations.  However, at the discovery conference on March 16, 2023, he advised the Court, in substance, that in anticipation of his absence from his office he had designated an individual in his office to monitor his cases, including this one, but that the individual failed to notify him of the Counterclaim.

[24]   As relevant, Bankruptcy Rule 7012(a) states: "The plaintiff shall serve a reply to a counterclaim in the answer within 21 days after service of the answer or, if a reply is ordered by the court, within 21 days after service of the order, unless the order otherwise directs."  Fed. R. Bankr. P. 12(a).

[25]   *Answer to Counterclaim*, AP ECF No. 52.

[26]   *Letter Pursuant to Local Rule 7007-1(b) Requesting Discovery Conference*, AP ECF No. 53.

[27]   *Memorandum Endorsed Order, March 10, 2023*, AP ECF No. 54.

By letter to the Court dated March 13, 2023 (the "Urthbox Letter"),[28] Urthbox responded to the Trustee Letter.  In it, Urthbox advised that it did not object to a discovery conference with the Court, but that it stood by its objections to the Discovery Requests.  Urthbox Letter at 1. Urthbox noted, among other things, that the Trustee "did not take any action to prosecute this action against Urthbox until October 26, 2022, at which point it sent document requests and interrogatories to Urthbox.  ***422 days passed between Urthbox's service of its answer and counterclaims and the Trustee's taking any step to assert its claims*** between Urthbox."  *Id.*  It asserted that "[t]his unjustified delay [in filing the Trustee's Answer] is sufficient to justify a default judgment against the Trustee."  *Id.* at 2.  It also contended, in the alternative, that "this action is subject to dismissal due to the Trustee's failure to prosecute . . . pursuant to Fed. R. Civ. P. 41(a) [sic]."  *Id.*  Urthbox requested that a return date be set, pursuant to Local Rule 5070-1, so that the parties could fully brief those issues, and that the Court stay the Trustee's Discovery Requests until those issues are resolved.  *Id.*

At the March 16 conference, the Court stayed the Discovery Request, authorized Urthbox to file its motion, and directed the parties to submit an agreed briefing schedule.  By letter dated March 22, 2013, Urthbox and the Trustee complied with that directive.[29]

As noted, in the Urthbox Motion, Urthbox seeks the entry of a default judgment against the Trustee on the Counterclaim pursuant to Federal Rule 55, or in the alternative, the entry of an order dismissing the Amended Complaint for failure to prosecute under Federal Rule 41(b), and

---

[28]    *Letter in Response to Trustee's Request for Discovery Conference*, AP ECF No. 55.

[29]    *Letter re Proposed Briefing Schedule*, AP ECF No. 56; *see also Memorandum Endorsed Order, March 31, 2023*, AP ECF No. 57.

an order striking the Trustee's Answer pursuant to Federal Rule 12(a). The Court considers those matters below.

## Analysis

## Urthbox Request for Entry of Default Judgment

Together, Federal Rules 55(a) and (b) "provide[] a 'two-step process' for the entry of judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment . . . ." *Id.*

Urthbox requests that the Court enter a default judgment against the Trustee. Urthbox Motion at 1. The Clerk of the Court did not enter the Trustee's default herein, and Urthbox did not request that the Clerk do so. Since Urthbox has not complied with Federal Rule 55(a), it is not entitled to the entry of a default judgment under Federal Rule 55(b). *Alli v. Steward-Bowden*, No. 11-cv-4952, 2012 WL 3711581, at *3 (S.D.N.Y. Aug. 24, 2012) ("Here, [the plaintiff] failed to complete the first step in the process, which is to obtain the entry of a default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure . . . ."); *Gluco Perfect, LLC v. Perfect Gluco Products, Inc.*, No. 14-cv-1678, 2016 WL 11469931, at *4 (E.D.N.Y. Jan. 7, 2016) (declining to enter a default judgment where there was no entry of default).

Still, Urthbox argues that the Trustee defaulted by filing his answer fifteen months after the deadline under Bankruptcy Rule 7012(a) for filing an answer to the Counterclaim, and that the Court should treat the late filed Trustee's Answer as a motion under Federal Rule 55(c) to vacate his default and deny it because the Trustee has failed to demonstrate grounds for such relief. *See*

10

Urthbox Motion at 3–4.  Federal Rule 55(c) provides that "[t]he court may set aside an entry of

default for good cause, and it may set aside a final default judgment under [Federal] Rule 60(b)."

Fed. R. Civ. P. 55(c).  By its terms, the rule is not applicable in this case because neither a default

nor a default judgment has been entered against the Trustee.[30]

The Court finds *Alli* to be instructive.  In that case, the plaintiff, acting pro se, served a

summons and complaint on multiple defendants on February 1 and 2, 2012, with answers due on

February 22 and 23, 2012, respectively.  *Alli*, 2012 WL 3711581, at *1.  The defendants answered

the complaint on March 21, 2012.  *Id.*  The plaintiff contended that he filed a default judgment

motion on or about March 12, 2012, by mailing the motion directly to the chambers of the court.

*Id.*  That motion was returned, without apparent reason, two weeks later.  *Id.*  The plaintiff refiled

his motion for default judgment on April 19, 2012, by mailing the motion to the pro se office and

the court.  *Id.*  The defendants opposed the motion, arguing that the plaintiff failed to obtain an

---

[30]   The cases on which Urthbox relies in support of its claim for relief under Federal Rule 55(c) are distinguishable and do not lend any support to Urthbox's request for relief under Federal Rule 55.  In *Guangxi Nanning Baiyang Food Co., Ltd. v. Long River Int'l*, No. 09-cv-3059, 2010 WL 1257573, at *1 (S.D.N.Y. Mar. 30, 2010), the plaintiff sued the defendant for breach of contract.  When the defendant failed to respond to the complaint within the deadline provided by the Federal Rules, the clerk of the court entered the defendant's default.  The next day, the defendant filed an untimely answer asserting affirmative defenses and a counterclaim.  *Id.*  Thereafter, the plaintiff moved for entry of a default judgment under Federal Rule 55(b)(2).  *Id.*  The *Guangxi* court found that the filing of a late answer is tantamount to a motion to vacate a default under Federal Rule 55(c).  *Id.* at *3.  It found that the defendant did not demonstrate "good cause" for such relief.  No default has been entered here, making analysis under Federal Rule 55(b) inapplicable.

In *Packard v. City of New York*, No. 15-cv-07130, 2018 WL 2229123, at *1 (S.D.N.Y. Apr. 30, 2018), the defendant moved the court for a *nunc pro tunc* extension of time to respond to the plaintiff's complaint.  In assessing the merits of the motion, the court noted that courts analyze the filing of a late-filed answer under both Federal Rules 6(b) and 55(c).  *Id.*  The court found it appropriate to analyze the motion under Federal Rule 55(c), stating:

> The Court finds that the [Federal] Rule 55(c) standard is appropriate here because, unlike denying a motion for a *nunc pro tunc* extension of a deadline for some types of filings, a denial in this context would necessarily result in Plaintiffs moving for a default.  The Court finds no reason to apply the higher standard of excusable neglect at this juncture when the Court could later vacate a default and allow the Defendant to answer under the more lenient "good cause" standard.

*Id.*  The court found good cause existed under Federal Rule 55(c) to permit the defendant to file its late answer. *Packard* is inapplicable because the Trustee is not seeking leave to file the Trustee's Answer.  Below, the Court discusses Urthbox's request that the Court strike the answer pursuant to Federal Rule12(a).

entry of default from the clerk of the court, and he could not do so after they filed their answer. *Id.* at *2. The court found that the plaintiff failed to complete the first step in the default judgment process—to obtain the entry of default pursuant to Federal Rule 55(a). *Id.* at *3. The court held that "[a]bsent evidence that the defendants' default has been entered, [the plaintiff] cannot obtain a judgment by default." *Id.* The court further stated, "[g]iven that [the plaintiff] did not obtain the Clerk of Court's certificate noting a default and no default was entered by the Clerk of Court prior to the filing of this motion, as required by Rule 55(a) of the Federal Rules of Civil procedure, no basis exists for granting [the Plaintiff's] motion for judgment by default." *Id.*

The Court denies Urthbox's request for the entry of a default judgment against the Trustee under Federal Rule 55.

**Urthbox Request for Relief Under Federal Rule 41(b)**

Federal Rule 41(b) states, as follows:

Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). "The purpose of the rule is to prevent undue delays in litigation and to avoid congestion in the calendars of the courts. It imposes a duty of due diligence on plaintiff in view of the policy favoring the prompt disposition of cases." James W. Moore et al., 8 Moore's Federal Practice § 41.51[1] (3d ed. 2020) (footnotes omitted).

In cases where a plaintiff does not timely respond to a defendant's counterclaim, courts applying Rule 41(b) assess the delay based on the prosecution of the case as a whole and not based upon the failure to timely file an answer to the counterclaim. *See Liberty Synergistics, Inc. v. Microflo, Ltd.*, No. 11-cv-00523, 2017 WL 9512403, at *2 (E.D.N.Y. May 11, 2017)

(recommending, in a magistrate judge's report, dismissal of a case pursuant to Federal Rule 41(b) based upon a failure to appear at multiple status conferences or retain new counsel and separately entering a default based on failure to answer counterclaims), *adopted*, No. 11-cv-00523, 2017 WL 4119268 (E.D.N.Y. Sept. 18, 2017); *Nixon v. Cole-Hoover*, No. 09-cv-237, 2009 WL 5214958, at *2–3 (W.D.N.Y. Dec. 28, 2009) (dismissing a case pursuant to Federal Rule 41(b) based upon failure to appear at pretrial hearing and to enter a case management order and entering a default on the unanswered counterclaims pursuant to Federal Rule 55); *Van Tuyl v. Rolls-Royce Welfare Benefits Plan*, No. 13-cv-1022, 2014 WL 1659722, at *2–3 (S.D. Ind. Apr. 14, 2014) (dismissing plaintiff's complaint pursuant to Federal Rule 41(b) based on plaintiff's failure to prosecute the complaint, and directing entry of default against plaintiff on defendants' counterclaim, pursuant to Federal Rule 55(a), based on plaintiff's failure to defend the counterclaim).

Courts in the Second Circuit consider the following factors in addressing a motion to dismiss a case for lack of prosecution under Federal Rule 41(b):

(1) whether the plaintiff's failure to prosecute caused a delay of significant duration;

(2) whether the plaintiff was given notice that further delay would result in dismissal;

(3) whether the defendant was likely to be prejudiced by further delay;

(4) whether the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and

(5) whether the trial court adequately assessed the efficacy of lesser sanctions.

*See Ruzsa v. Rubenstein Sendy Att'ys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (quoting *U.S. ex rel Drake v. Norden Sys.*, 375 F.3d 248, 254 (2d Cir. 2004)). No one factor is dispositive. *Nita v. Conn. Dep't of Env't Prot.*, 16 F.3d 482, 485 (2d Cir. 1994); *see also Drake*, 375 F.3d at 254 ("No one factor is dispositive, and ultimately [courts] must review the dismissal in light of the record as

a whole."). "[D]ismissal for want of prosecution is a matter committed to the discretion of the trial judge." *Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981). It is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Theilmann v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)); *see also Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) ("Dismissing an action . . . is the harshest of sanctions and must be proceeded by particular procedural prerequisites"). Indeed, the use of an involuntary dismissal should be employed only when the court "is sure of the impotence of lesser sanctions." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980) (affirming dismissal where the "behavior of plaintiff and his attorney in this case was dilatory, obstreperous, and resolute").

As set forth below, based on the record of this case, the Court finds that application of these factors does not support Urthbox's request to dismiss the Amended Complaint for failure to prosecute.

Duration

In applying the first factor, courts consider: (1) whether the plaintiff, and not the defendant, failed to prosecute the action, and (2) whether the plaintiff's failure to prosecute was of significant duration. *Drake*, 375 F.3d at 255 ("The question we must ask with respect to duration is simply whether or not the delay was caused by plaintiff's side as a whole."). "Although Rule 41(b) does not define what constitutes a failure to prosecute, '[i]t can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics.'" *Cognotec Servs., Ltd v. Morgan Guar. Tr., Co.*, No. 93-cv-4878, 1999 WL 627411, at *2 (S.D.N.Y. Aug. 16, 1999) (quoting *Lyell Theatre Corp. v. Lowes Corp.*, 682 F.2d 37, 42 (2d Cir. 1982)). The former is relevant here. The Second Circuit has not stated how much time must elapse before a delay in

prosecuting an action qualifies as "significant." *See Rubin v. Abbott Lab'ys*, 319 F.R.D. 118, 119 (S.D.N.Y. 2016). However, courts in this circuit have dismissed cases under Federal Rule 41(b) for delays of between five and ten months, *Peters-Trunbull v. Bd. of Educ.*, No. 96-cv-4914, 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999), delays of six months, *Chira*, 634 F.2d at 664, and delays of four months, *Deptola v. Doe*, No. 04-cv-1379, 2005 WL 2483341, at *2 (E.D.N.Y. Oct. 7, 2005).

Urthbox asserts that there were no external factors that prevented the Trustee from prosecuting this action, thus making his failure to prosecute the case entirely his own fault. Urthbox Motion at 5. It also maintains that the Trustee's fourteen-month delay in prosecuting this action is more than sufficient to justify dismissing this action. *Id.* Trustee's counsel explains that, as part of the Trustee's litigation strategy, he elected not to seek discovery of Urthbox while he attempted to ascertain the Foult's and Volotova's culpability for TTW's actions. *See* Objection at 11. The approximately fourteen months between August 30, 2021, when Urthbox filed its Counterclaim, and October 26, 2022, when the Trustee served his discovery requests on Urthbox, is plainly a significant duration. *See Drake*, 375 F.3d at 255 ("We also agree that plaintiff's 17-month delay was significant"); *see also Canini v. U.S. Dep't of Justice Fed. Bureau of Prisons*, No. 04-cv-9049, 2008 WL 818696, at *7 (S.D.N.Y. Mar. 26, 2008) ("Plaintiff's failure to prosecute caused a [sixteen-month] delay that was of significant duration by any standard"); *Gone v. Wackenhut Servs., Inc.*, No. 10-cv-2495, 2011 WL 2610550, at *3 (S.D.N.Y. June 17, 2011) ("[T]he approximately eight month delay between the March 24, 2010 deadline and Plaintiff's February 2, 2011 submission is not insufficient to allow for dismissal."). Application of the first factor weighs in favor of dismissing the Amended Complaint against Urthbox for failure to prosecute.

Notice

The focus of the second factor is on whether the Trustee was put on notice that his delay in prosecuting the case would result in the dismissal of the Amended Complaint against Urthbox. "This factor contemplates a *specific* warning from the court that dismissal with prejudice is imminent." *U.S. ex rel. Pervez v. Maimonides Med. Ctr.*, 06-cv-4989, 2010 WL 890236, at *3 (S.D.N.Y. Mar. 9, 2010) (citing *Drake*, 375 F.3d at 255 (holding that a court's warning that the case would be dismissed if plaintiff did not submit an adequate explanation for his past delay did not provide sufficient notice that he faced dismissal for any future delay); *Lyell*, 682 F.2d at 42 (noting that plaintiff cannot deny being on notice after being warned several times that dismissal was possible); *Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir. 1994) (finding adequate notice when the Court warned plaintiff specifically that failure to comply with an order would result in dismissal under Federal Rule 41(b))).   No such notice was provided here, and Urthbox does not contend otherwise.   Application of this factor does not support the Urthbox Motion.

Prejudice

The next factor is whether Urthbox is "likely to be prejudiced by further delay." *Ruzsa*, 520 F.3d at 177.   No further delay in the Trustee's prosecution of his claims against Urthbox is contemplated because the Trustee served the Discovery Requests on Urthbox and has sought the assistance of this Court in obtaining responses to those requests.   Still, Urthbox says that it has been "deeply prejudiced by the Trustee's inaction" and that "[t]he prejudice [it] has suffered is incurable."   Urthbox Motion at 4, 6.   It equates "prejudice" with the "circumstances that make it more difficult for a party to prosecute its case" like the "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion."   *Id.* at 4 (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).

16

It is settled that "[p]rejudice may be presumed as a matter of law in certain cases." *Drake*, 375 F.3d at 256; *see also Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir.1999) ("[D]elay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult."). The presumption of prejudice is rebuttable. *See LeSane*, 239 F.3d at 210. In evaluating the extent to which delay in prosecution has been prejudicial, courts focus on two factors. First, they consider the degree to which the delay was lengthy and inexcusable. "[I]n cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Feurtado v. City of New York*¸ 225 F.R.D. 474, 480 (S.D.N.Y. 2004) (quoting *Lyell*, 682 F.2d at 43). Second, courts consider the plaintiff's actions generally in the prosecution of the case. "In considering the degree of prejudice against the defendant, the extent to which the plaintiff's conduct was contumacious must also be considered." *Pervez*, 2010 WL 890236, at *4 (citing *Drake*, 375 F.3d at 257).

The Trustee took no action to prosecute his claims against Urthbox during the fourteen months between August 30, 2021, when Urthbox filed the Urthbox Answer and Counterclaim, and October 26, 2022, when he served his Discovery Requests on Urthbox. The Trustee's delay in seeking that discovery was the product of his litigation strategy that called for him to assess the culpability of Foult and Volotova before addressing his claims against Urthbox. The Trustee served the Discovery Requests on Urthbox approximately seven weeks after the Court approved his partial settlement with Foult. It may be debatable whether that is sound litigation strategy, but there is no question that the Trustee's conduct in this case has not been contumacious. *Cf. Drake*, 375 F.3d at 248 (finding that, where a plaintiff has repeatedly failed to file his amended pleadings, even after being told a continued failure to do so would result in dismissal, prejudice may be presumed) (citing *Lyell*, 682 F.2d at 42 ("Plaintiff's duty to due diligence is imposed because of

17

the strong policy favoring prompt disposition of cases. Prejudice to defendants resulting from unreasonable delay may be presumed . . . .")).

The Trustee's delay in seeking the discovery was moderate. His delay was not so long that it can be considered lengthy enough to presume prejudice. *See id.* at 255–257 (ruling that the seventeen-month delay following court orders was insufficient to create presumption of prejudice). Moreover, Urthbox has not demonstrated that it has been prejudiced by the Trustee's delay in pursuing the Discovery Requests. Rather, it asserts merely that "during 2022, [its] revenues have fallen by over 50% and it has undergone substantial layoffs. Accordingly, Urthbox has far fewer resources with which to assert its legal rights." Behrouzi Declaration ¶ 9. Urthbox has not identified any loss of evidence or concern regarding fraud or collusion that stems from the Trustee's failure to seek discovery earlier. Moreover, it has been on notice of the Trustee's claims since September 2, 2020, when the Trustee filed the Amended Complaint, and it articulated its Counterclaim when it filed its answer on August 30, 2021. Urthbox plainly has been in a position to preserve evidence relevant to the prosecution of the Amended Complaint and Counterclaim. *See LAK3 v. Dunn (In re Dunn)*, 620 B.R. 228, 235 (S.D.N.Y. 2020) (finding that the risk of the decay of evidence is less where the defendant is on notice of the charges against them and can preserve the evidence). Application of this factor does not support the Urthbox Motion.

Balance Between Calendar Congestion and Opportunity to Be Heard

The fourth factor requires the Court to consider the balance between calendar congestion and the Trustee's right to prosecute his case. Both parties say that factor weighs in their favor. Urthbox contends that "the Trustee has had ample opportunities for [his] day in Court, and has not taken them." Urthbox Motion at 6. The Trustee argues "that the Court's calendar has not been impeded in this matter." Objection at 12. The Second Circuit cautions that "a court must not let

18

its zeal for a tidy calendar overcome its duty to do justice." *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968). Accordingly, "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). There is no such evidence in this case. The Trustee's inaction has given rise to this motion—and nothing more. Although the motion adds to the strain on judicial resources in this Court, the overall effect on the Court's calendar is minimal. Moreover, in considering this factor, courts look to the plaintiff's conduct over the course of the case. A plaintiff "vastly diminishes his right to have his claim heard" where he "repeatedly disobey[s] court orders." *Feurtado*, 225 F.R.D. at 480; *see also Komatsu v. City of New York*, No. 20-cv-7046, 2023 WL 3847145, at *3 (S.D.N.Y. June 6, 2023) ("It is abundantly clear that [the sanctioned plaintiff] is likely to continue to abuse the judicial process, as he has continued to defy this Court's directives in his subsequent filings."). There is no evidence of such wrongdoing by the Trustee. Application of this factor weighs against dismissing the Amended Complaint.

<u>Consideration of Lesser Sanctions</u>

Both parties contend that the fifth factor weighs in their favor. Urthbox summarily asserts that the prejudice it suffered is "incurable." Urthbox Motion at 6. However, as discussed above, the record does not support that contention. The record is clear that the Trustee's delay in propounding his Discovery Requests is the product of law office failure. The Trustee has not disregarded orders of this Court or otherwise engaged in contumacious behavior in the course of this case. The Trustee contends, and the Court agrees, that it is inappropriate to dismiss this case because it should be resolved on the merits. *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) ("This Court has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default.").

In reaching this conclusion, the Court has considered the efficacy of lesser sanctions than dismissal.  *See Chira*, 634 F.2d at 665 ("The remedy [of dismissal] is pungent, rarely used and conclusive.  A district judge should employ it only when he is sure of the impotence of lesser sanctions." (footnote omitted)); *Martens v. Thomann*, 273 F.3d 159, 182 (2d Cir. 2001) ("The court did not expressly consider, however, whether any remedy short of dismissal would have been effective.  This Court has reversed under similar circumstances . . . .").  The Court finds that a lesser sanction is neither reasonable nor appropriate in this case.

Urthbox has not met its burden under Federal Rule 41(b) to demonstrate that the Court should dismiss the Amended Complaint based on the Trustee's failure to prosecute the complaint.

**Urthbox Request that the Court Strike the Trustee's Answer**

Alternatively, Urthbox requests that the Court strike the Trustee's Answer "under the Court's authority to enforce the deadline for filing an answer established by [Federal] Rule 12(a)."  Urthbox Motion at 7.  Courts have the inherent power to enforce Federal Rule 12(a), and by extension its equivalent Bankruptcy Rule 7012(a).  *See Car–Freshner Co. v. Air Freshners, Inc.*, No. 10–cv–1491, 2012 WL 3294948, at *2 (N.D.N.Y. Aug. 10, 2012); *see also J&J Sports Prods., Inc. v. Lawson*, No. 17-cv-02939, 2019 WL 1754744, at *2 (D.S.C. Apr. 19, 2019) ("[F]ederal district courts 'have inherent power' to impose sanctions—say striking an untimely answer—for violations of Rule 12(a).'" (quoting *State Compensation Ins. Fund v. Capen*, No. 15-01279, 2016 WL 9083270, at *2 (C.D. Cal. Dec. 16, 2016))).  "[W]here a motion to strike an answer is based on untimeliness . . . such a motion properly arises under the Court's authority to enforce the deadline for filing an answer established by the Fed. R. Civ. P. 12(a)[] (and any relevant Local Rules of Practice)."  *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-cv-8171, 2015 WL 999981, at *2 (S.D.N.Y. Mar. 5, 2015) (alterations and omission in original) (quoting *Car-Freshner*, 2012 WL

3294948, at *5).  Generally, such a motion is governed by Federal Rule 55(c), the same standard that governs a motion to set aside an entry of default." *Id.*

Under Federal Rule 55(c), the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).  The rule does not define the term "good cause."  However, the Second Circuit has established three criteria that courts must consider in deciding whether to relieve a party from a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993); *accord Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013); *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, 17-cv-9489, 2019 WL 1099944, at *1 (S.D.N.Y. Mar. 8, 2019).  "A default may be vacated upon a showing that the three factors on balance support relief." *Bank of N.Y v. Meridien Biao Bank Tanzania Ltd.*, 95-cv-4856, 1998 WL 417510, at *2 (S.D.N.Y. July 24, 1998) (Sotomayor, J)). Accordingly, the *Enron* factors "do not have to be afforded equal weight, and need not point in the same direction.  Rather, the court must balance the relative weight of each of these factors in an effort to arrive at an equitable result." *In re Treco*, No. 95-44326, 2001 WL 1566701, at *8 (Bankr. S.D.N.Y. Dec. 10, 2001).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96.  In weighing such equitable factors, "the Court must be mindful that 'strong public policy favors resolving disputes on the merits.'"  *Skyline Steel*, 2015 WL 999981, at *2 (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001)).  "Accordingly, 'judgment by default [or the equivalent here, striking the Trustee's Answer] is a drastic remedy to be applied only in extreme circumstances.'"  *Id.* (quoting *Alli*, 2012 WL 3711581, at *3).

21

As set forth below, the Court finds that Urthbox has not met its burden of demonstrating that application of the *Enron* factors warrants striking the Trustee's Answer.

<u>Willfulness</u>

In the context of a judgment by default, willfulness requires "'something more than mere negligence,' such as 'egregious or deliberate conduct,' although 'the degree of negligence in precipitating a default is a relevant factor to be considered.'" *Green*, 420 F.3d at 108 (quoting *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996)); *see, e.g.*, *SEC v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) (finding that defendant's default in answering complaint was "willful" where their failure to file an answer was part of a plan to delay the court proceedings); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) (finding that defendant's default was "willful" where the defendant deliberately failed to appear). "One key indicator of willfulness is how the defendant acted after learning 'of the existence of the litigation or entry of default.'" *Wandel v. Gao*, No. 20-cv-03259, 2022 WL 61867, at *4 (S.D.N.Y. Jan. 6, 2022) (quoting *Parisienne v. Heykorean, Inc.*, No. 19-cv-2257, 2019 WL 6324632, at *2 (S.D.N.Y. Nov. 26, 2019)). Urthbox asserts that the Trustee's failure to timely answer the Counterclaim was "presumptively willful" because "[t]he Trustee failed to file an answer for more that sixteen months, despite having chosen to proceed against other defendants during this time" and "lack[s] . . . any satisfactory excuse for [his] inaction." Urthbox Motion at 4; *see also* Reply at 5 ("Here, the Trustee failed to file an answer for more than sixteen months, without any satisfactory excuse.").

Although Urthbox served the Counterclaim on Trustee's counsel on or about August 30, 2021, Mr. Medina did not become aware of the Counterclaim until December 16, 2022, when Urthbox's responses to discovery requests referenced an unanswered counterclaim. Medina

Declaration ¶ 3.  The record is clear that "for several months" after the filing of the Counterclaim Mr. Medina did not closely monitor the case because he was frequently out of the office attending to a serious health-related family matter.  *Id.*  For unexplained reasons, the attorney in Mr. Medina's office with hands on responsibility for overseeing the case failed to account for the Counterclaim.  *Id.*; Reply at 5.

The Trustee was plainly negligent in failing to file the Trustee's Answer on a timely basis. However, the Trustee's failure to act was not the product of deliberate or egregious conduct.  For example, there is no evidence offered to suggest that the Trustee was engaged in an effort to delay resolution of the adversary proceeding, or that the Trustee willfully ignored requests to file an answer.  To the contrary, the record demonstrates that, upon learning of the Counterclaim, the Trustee immediately reached out to Urthbox, and filed an answer approximately two weeks later. In *Durso v. Modern Food Cent., Inc.*, No. 17-cv-7324, 2019 WL 2150424 (S.D.N.Y. May 17, 2019), the district court found under similar circumstances—illness in the attorney's family and staff turnover in the attorney's office—there was not willful behavior on the part of the defendants in misfiling their motion to vacate a default and failing to adequately respond to other court instructed filings over the course of approximately eight months.  *Id.* at *3–4, 6–7.

Urthbox has not met its burden demonstrating that the Trustee's failure to timely file the Trustee's Answer was "willful."  *See, e.g.*, *Am. Alliance Ins.*, 92 F.3d at 60 (finding no willfulness where the delay was caused by an inadvertent filing error and an incorrect assumption made by an office manager); *Brien v. Kullman Indus., Inc.*, 61 F.3d 1073, 1078 (2d Cir. 1995) (finding no willfulness where party incorrectly assumed that the answer would be due after a petition for removal was determined); *Carrasco v. Acropol Rest. Corp.*, No. 18-cv-7883, 2019 WL 2325556,

at *3 (S.D.N.Y. May 31, 2019) (finding no willfulness in not answering complaint when defendants acted promptly upon being served with a motion for a default judgment).

Prejudice

A plaintiff may demonstrate prejudice under Rule 55(c) "by showing 'that delay [due to vacatur] will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Durso*, 2019 WL 2150424, at * 7 (alteration in original) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (analyzing prejudice in a magistrate judge's report and recommendation); *see Kovalchik v. City of New York*, 2017 WL 3105873, at *5 (S.D.N.Y. July 21, 2017); *Johnson v. New York Univ.*, 324 F.R.D. 65, 71 (S.D.N.Y. 2018). That is the same standard that the Court applied in analyzing the "Prejudice" factor under Federal Rule 41(b). For the reasons previously discussed, the Court finds that Urthbox has not demonstrated that it will be prejudiced if the Court does not strike the Trustee's Answer.

Meritorious Defense

The Court next considers whether the Trustee has presented a meritorious defense to the Counterclaim. In support of the Objection, the Trustee must present a defense "with a degree of specificity which directly relates that defense to the allegations set forth in plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Salomon v. 1498 Realty*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993). "The defaulting defendant 'need only meet a low threshold to satisfy this factor.'" *Gench v. HostGator.com LLC*, No. 14-cv-3592, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)).

In support of the Counterclaim, Urthbox asserts six claims "both directly and in the form of a setoff against any amounts it allegedly owes to [the Debtor's] estate." Urthbox Answer ¶ 1.

24

Those claims are for: (i) fraudulent misrepresentation; (ii) negligent misrepresentation; (iii) fraudulent inducement; (iv) breach of contract; (v) contractual indemnification; and (vi) setoff under 11 U.S.C. § 553(a) and California Code of Civil Procedure § 431.70.

In responding to the Counterclaim, the Trustee asserts the following five affirmative defenses: (i) the Counterclaim is barred by 11 U.S.C. 502; (ii) the Counterclaim fails to state a claim upon which relief may be granted; (iii) the Counterclaim is barred by the doctrine of unclean hands; (iv) the Counterclaim is barred by *impare delicto*; and (v) the Counterclaim is barred by 11 U.S.C. 362. Trustee's Answer at 11–12.

In support of its motion, Urthbox asserts that the Trustee's Answer "is free of any evidence beyond conclusory denials and one-sentence recitations of affirmative defenses," and therefore it does not raise a meritorious defense under the Federal Rule 55(c) standard. Urthbox Motion at 4. The Trustee disputes that contention. He argues that the Counterclaim is improper because (i) Urthbox did not file a claim in this chapter 7 case and, as such, is barred from asserting the Counterclaim, Objection at 5; (ii) as a fraudulent-transfer defendant, Urthbox may not set off its obligations to the estate against the Trustee's recovery on the estate's fraudulent-transfer claims, *id.* at 6; and (iii) Urthbox was required to seek relief from the automatic stay before asserting its Counterclaim, *id.* at 6–7.[31]

First, the Court finds no merit to the Trustee's contention that Urthbox ran afoul of the automatic stay in asserting the Counterclaim. "Clearly, . . . counterclaims asserted against the debtor in the same bankruptcy proceeding in which the debtor initiated the action against the counterclaimants are not violative of the automatic stay, although they would be if asserted in

---

[31] The automatic-stay argument the Trustee made in his Objection dovetails with his fifth affirmative defense, i.e., that the Counterclaim is barred by 11 U.S.C. § 362, which governs the automatic stay.

another proceeding." *Armco Fin. Servs. v. N. Atl. Ins. Co. Ltd. (In re Bird)*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999); *see also Pergament v. Diamond (In re Diamond)*, No. 20-8175, 2021 WL 1535801, at *5 (Bankr. E.D.N.Y. Feb. 9, 2021) ("Courts generally have held that actions against a debtor that are commenced in the bankruptcy court where the debtor's case is pending do not violate the automatic stay.").

Moreover, the Trustee is in error to the extent that he argues a filed proof of claim is a prerequisite for asserting a setoff. "The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff." *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345, 365–66 (Bankr. S.D.N.Y. 2009) (collecting authorities). "Making the right to assert the attribute of setoff dependent upon the filing of the proof of claim is an intrusion into the creditor's rights which is not contemplated in the Bankruptcy Code. It is also an improper application of the provisions of 11 U.S.C. § 502(b)." *Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1319 (10th Cir. 1987).

However, the Court agrees that the Trustee has asserted a meritorious defense to the Counterclaim on the ground that Urthbox is barred from setting off its Counterclaim against the Trustee's fraudulent-transfer claim. In support of the Counterclaim, Urthbox states that it seeks recompense "both directly and in the form of a setoff against any amounts it allegedly owes to [the Debtor's] estate." Urthbox Answer ¶¶ 1.[32]

The doctrine of setoff "allows mutual debts between a creditor and a debtor's estate to be set-off against one another." *Lines v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 743 F. Supp. 176, 182 (S.D.N.Y. 1990). The doctrine is codified at section 553 of the Bankruptcy Code, which describes the conditions under which certain mutual debts may be set off against one another. 11 U.S.C.

---

[32] It also asserts a distinct count stemming from section 553 of the Bankruptcy Code and California state law. Urthbox Answer ¶¶ 71–75.

§ 553.   However, the doctrine is "restricted in its application by both legal and equitable principles." *Lines*, 743 F. Supp. 176, 182 (quoting *In re Windsor Comm'ns Grp., Inc.*, 79 B.R. 210, 215 (E.D. Pa. 1987)).   "Courts therefore have uniformly held that a creditor who obtains a debtor's property wrongfully is not entitled to set off their liability for that wrongful conduct against a claim that the creditor holds against the debtor." *Id.* at 183.   In addition to its inapplicability in in the face of a defendant's wrongful conduct, setoff "is also subject to the requirement of mutuality, . . . which 'requires that the debts and credits must be in the same right, and between the same parties, standing in the same capacity." *Id.* (quoting *In re Windsor Comm'ns*, 79 B.R. at 217).   "Mutuality is not present when the creditor has no debt to off-set against the debtor except the liability for the wrongful conversion." *Id.*  This is because, ordinarily, where "a defendant with a pre-petition claim against the debtor seeks to set that claim off against liability to the Trustee as a transferee of a fraudulent conveyance, mutuality is lacking because liability of such a defendant to the Trustee does not constitute a pre-petition debt owed to the debtor;" it is instead an obligation that the defendant owes to the transferee. *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 308 (Bankr. E.D.N.Y. 2010).   Put another way, in the context of a setoff, there is no mutuality where a defendant attempts to set off its fraudulent-transfer liability with an ordinary prepetition claim that arises out of a different transaction because they are not "in the same right and between the same parties, standing in the same capacity." *Id.* (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990)).   Here, the claims underlying Urthbox's Counterclaim accrued against the Debtor prepetition, whereas any liability for the fraudulent-transfer claim is held by the Trustee as a post-petition obligation. *See id.*

Therefore, the claims are not in the same right and between the same parties, standing in the same capacity.[33]

The Court finds that the Trustee makes a meritorious argument that Urthbox cannot set off its Counterclaim against its potential fraudulent-transfer liability because (i) to do so would arguably be inequitable, and (ii) the requirement for mutuality under the setoff doctrine is not met because Urthbox's liability arises only from the alleged fraudulent transfer as asserted by the Trustee, and the Counterclaim is for a prepetition debt accrued against the debtor. *Id.*

In its Reply, Urthbox asserts that "Urthbox's claim for setoff is in the nature of recoupment and can be asserted in response to fraudulent transfer and other claims asserted by the Trustee." Reply at 2. The Court determines that this does not defeat the Trustee's meritorious defense to the Counterclaim.

As an initial matter, in the Counterclaim, Urthbox asserts a claim for setoff under section 553(a) of the Bankruptcy Code, not a claim for recoupment. In bankruptcy law, this is a distinction with a difference. "Although the distinction between a recoupment and a setoff retains little significance under the modern rules for asserting counterclaims in pleading, the difference continues to be important in bankruptcy actions. While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not." *N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 96 (2d Cir. 1997). Thus, the Trustee's argument that a transferee may not set off a fraudulent-transfer claim presents a meritorious defense to the Counterclaim as pleaded. *See Hassett v. Weissman (In re O.P.M. Leasing Servs., Inc.)*, 35 B.R. 854, 867–68 (S.D.N.Y. 1983).

---

[33]    An example of a "classic setoff situation governed by section 553," is where a creditor has a prepetition claim against the debtor for a large outstanding debt on account of goods shipped, and the debtor can set off a portion of that debt on account of the creditor's debt to the debtor for defective goods. *See In re TSLC I, Inc.*, 332 B.R. 476, 479 (Bankr. M.D. Fla. 2005). Clearly, the case at bar is not such a classic setoff situation.

As an alternative basis, there is conflicting case law regarding the merits of the recoupment argument. *See Pereira v. Equitable Life Ins. Soc'y of the U.S. (In re Trace Int'l Holdings, Inc.)*, 289 B.R. 548, 562 (Bankr. S.D.N.Y. 2003). In *Trace*, the bankruptcy court determined that, because recoupment is an equitable remedy, it "is not generally available as a defense to a trustee's fraudulent transfer claim." *Id.* (citing *Geron v. Schulman (In re Manshul Constr. Corp.)*, No. 97-cv-8851, 2000 WL 1228866, at *56–57 (S.D.N.Y. Aug. 30, 2000) (disallowing parties the equitable remedy of recoupment where the facts reflected that they could not have "come to court with clean hands"); *McColley v. Rosenberg (In re Candor Diamond Corp.)*, 76 B.R. 342, 352 n.12 (Bankr. S.D.N.Y. 1987) ("Under no circumstances can defendants be said to have come here with clean hands.")). However, the court did point to one earlier case in which recoupment was permitted against a fraudulent-transfer claim where the counterclaimant asserted a counterclaim for fraud in the inducement. *Id.* (citing *In re Integrated Res., Inc.*, 157 B.R. 66, 73 (S.D.N.Y. 1993)).

Urthbox first raised its recoupment argument in its Reply, and so the Trustee has not had the opportunity to address that argument in its papers. *See In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007)). However, the Trustee has raised in its answer an affirmative defense on the equitable ground that Urthbox has unclean hands. Therefore, even crediting Urthbox's new recoupment argument, the Trustee's Answer contains a defense that could challenge Urthbox's recoupment on the equitable ground that it has come to court with unclean hands. *See In re Trace Int'l Holdings, Inc.*, 289 B.R. at 562; *In re Manshul Constr. Corp.*, 2000 WL 1228866, at *56–57; *In re Candor Diamond Corp.*, 76 B.R. at 352 n.12.

In reviewing the *Enron* factors, the Court finds that all three factors weigh against striking the Trustee's Answer. *Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 121 (E.D. Pa. 1996) (finding it insufficient to deny a motion to vacate a default, utilizing the same standard as a motion to strike an untimely answer, where the only factor weighing against the defendant was the defendant's lack of presenting facts toward a meritorious defense); *Toy v. Hayman*, No. 07-3076, 2008 WL 5046723, at *4 (D.N.J. Nov. 20, 2008) (finding in favor of vacating a default where only the factor of no meritorious defense pointed against vacating the default); *see also Lukaszuk v. Sudeen*, No. 02-cv-5143, 2006 WL 8435403, at *5 (E.D.N.Y. Sept. 1, 2006) (vacating the default even though the court could not conclusively determine that [the defendant] has no meritorious defenses); *cf. Nana v. Le Viking LLC*, No. 17-cv-928, 2020 WL 3182769, at *3 (S.D.N.Y. June 15, 2020) ("[A] genuine default ought not be vacated when it was willful and when there is no meritorious defense.").

### Conclusion

Based on the foregoing, the Court sustains the Objection and denies the Urthbox Motion.


IT IS SO ORDERED.

Dated: New York, New York
August 28, 2023

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge