UNITED STATES BANKRUPTCY COURT         NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------------x
In re:                                           :      Chapter 7
        Try the World, Inc.,                     :
                                                 :
                                    Debtor.      :      Case No. 18-11764 (JLG)
------------------------------------------------------------------------x
John S. Pereira, as Chapter 7 Trustee for the    :
estate of Try the World, Inc.,                   :
                                                 :
                                    Plaintiff,   :
                                                 :
v.                                               :      Adv. P. No.: 20-01013 (JLG)
                                                 :
Urthbox, Inc., Katerina Vorotova,                :
David Emmanuel, and John Does, 1, 2, 3,          :
                                                 :
                                    Defendants.  :
------------------------------------------------------------------------x
```

## MEMORANDUM DECISION AND ORDER RESOLVING URTHBOX'S RENEWED MOTION FOR SANCTIONS

**A P P E A R A N C E S :**

THE LAW OFFICES OF THEODORE GEIGER, PLLC
*Counsel to Urthbox, Inc.*
477 Madison Ave., 6th Floor
New York, NY 10022
By:    Theodore S. Geiger

MEDINA LAW FIRM LLC
*Counsel to the Chapter 7 Trustee John S. Pereira*
641 Lexington Avenue, 13th Floor
New York, NY 10022
By:    Eric S. Medina

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[1]

Approximately eight months prior to the Petition Date, Try the World ("TTW" or the "Debtor") sold substantially all of its assets to Urthbox Inc. ("Urthbox") pursuant to the Asset Purchase Agreement entered into between the parties. In this adversary proceeding, the Trustee seeks to avoid and recover alleged prepetition fraudulent transfers arising under that agreement.

The parties have engaged in discovery. The Trustee initially asserted Urthbox failed to respond to his Document Requests. With leave of the Court, the Trustee filed a motion (the "Discovery Motion")[2] under Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Rules")[3] for an order of the Court (i) compelling Urthbox to produce the information sought by the Trustee in his Document Request; (ii) setting new definitive date(s) for the Trustee's Rule 30(b)(6) deposition of Urthbox (the "Rule 30(b)(6) Deposition") following that production; and (iii) imposing sanctions for Urthbox's alleged failure to respond to the Document Request to include a presumption for trial or in any dispositive motion concerning this matter that the value of transfers made to Urthbox by TTW as not less than $1,222,000.00, and striking Urthbox's Affirmative Defenses and Counterclaim. The Trustee submitted the declaration of Eric C. Medina, his counsel, in support of the Discovery Motion (the "Medina Declaration").[4]

---

[1] Capitalized terms shall have the meanings ascribed to them herein.

[2] *Trustee's Motion for Discovery Sanctions*, ECF No. 97; *Declaration in Support of Trustee's Motion for Discovery Sanctions*, ECF No. 97-1. References to "ECF No. __" are to documents filed on the electronic docket of this adversary proceeding.

[3] Rules 26 and 37 are made applicable herein by Rules 7026 and 7037 of the Federal Rules of Bankruptcy Procedure.

[4] *Declaration in Support of Trustee's Motion for Discovery Sanctions*, ECF No. 97-1.

The Court granted the Discovery Motion in part and denied it in part. *See* 9/12 Order.[5] In short, and as relevant, the Court directed Urthbox, on or before October 15, 2024, to produce accounting records and financial statements concerning Urthbox's sales generated through the Customer Accounts, and archived emails, all from or after September 30, 2017, through the present. *Id.* at 19–20. The Court denied the Trustee's request to direct Urthbox to produce its tax returns and denied the Trustee's request for sanctions pursuant to Rule 37. *Id.* at 3, 19.

Urthbox did not fully comply with the 9/12 Order. The matter before the Court is the Trustee's renewed request for sanctions under Rule 37 (the "Renewed Sanctions Motion").[6] The Trustee requests that the Court render an adverse inference that Urthbox received transfers of money and property from TTW which are, at minimum, valued at $1,222,000, strike the Answer and Counterclaim, and award attorney's fees and costs. Renewed Sanctions Motion at 4–5. Urthbox submitted a statement in further support of its opposition to the request for sanctions (the "Opposition").[7] The Trustee filed a reply in further support of the request (the "Reply").[8]

For the reasons set forth herein, the Court grants the Renewed Sanctions Motion in part and denies in part.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United

---

[5] *Memorandum Decision and Order Resolving [Trustee's] Motion to Compel Discovery and Sanctions*, ECF No. 106 (the "9/12 Order").

[6] *Trustee's Briefing in Furtherance of Urthbox's Violation of September 12, 2024 Decision and Order*, ECF No. 114.

[7] *Statement In Further Support of Urthbox's Opposition to the Trustee's Request for Sanctions*, ECF No. 115.

[8] *Trustee's Reply Briefing in Furtherance of Relief Re: Urthbox's Violation of September 12, 2024 Decision and Order*, ECF No. 116.

States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

On June 9, 2018 (the "Petition Date"), TTW filed a voluntary petition for relief under

chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. Prior to the

Petition Date, TTW operated a subscription-based, as well as a "one-time purchase," snack food

box delivery service. 9/12 Order at 3. On June 11, 2018, John S. Pereira was appointed as chapter

7 trustee of TTW's estate (the "Trustee") and continues to serve in that capacity. *Id.* Urthbox is a

snack subscription company.

### The Asset Purchase Agreement

Approximately eight months prior to the Petition Date, pursuant to an Asset Purchase

Agreement dated September 30, 2017,[9] TTW sold substantially all its assets (the "Acquired

Assets") to Urthbox. 9/12 Order at 4. As relevant, under the Asset Purchase Agreement, the

consideration for the Acquired Assets includes:

> Urthbox's agreement to assume full obligations to deliver approximately
> 35,000 pre-paid snack boxes to Debtor's customers.
>
> A seven-month earn-out percentage of the revenue and cash receipts deposited
> into the Urthbox bank accounts resulting from the continuation and operation
> of, or from customers subscribing to, the Debtor's business after the closing
> date (the "Customer Accounts"), net of miscellaneous monthly fees, customer
> chargebacks and customer credits, in an amount not to exceed $772,000;[10] and
>
> The issuance of a convertible note valued at $500,000 to the Debtor's then
> current investors (including the Debtor's principals) based on their ownership

---

[9] The Asset Purchase Agreement is annexed as Exhibit B to the Medina Declaration.

[10] Specifically, Urthbox was to pay TTW 45% of the net cash receipts for the first month after the September 30, 2019 effective date of the Asset Purchase Agreement, 16% of the net cash receipts for the second month, 15% of the net cash receipts for the third month, 10% of the net cash receipts from the fourth and fifth months, and 5% of the net cash receipts from the sixth and seventh months. Asset Purchase Agreement at 7.

4

> of so-called Series Seed Preferred Equity, subject to the passing of thirty (30)
> calendar days from the closing date under the [Asset Purchase Agreement] and
> the payment of at least $200,000 in earn-out payments to the Debtor.

*Id.*

Urthbox contends that during the seven months following the Asset Purchase Agreement's effective date, it realized over $2 million from the Customer Accounts, which yielded approximately $300,000 in earn-out payments under the Asset Purchase Agreement, before deductions for unforeseen costs. *Id.* Urthbox paid TTW approximately $196,000 of this amount. It maintains that the rest was offset by substantial unforeseen costs borne by Urthbox due to TTW's alleged undisclosed failures to pay vendors, suppliers, marketing channels, and TTW's alleged greater-than-disclosed failures to serve its customer base. *Id.* at 4–5.

**The Adversary Proceeding**

In this adversary proceeding, the Trustee contends that Urthbox structured the Asset Purchase Agreement to defraud TTW's creditors. In his Amended Complaint,[11] the Trustee seeks to avoid and preserve the transfers of the Acquired Assets under the Asset Purchase Agreement as fraudulent transfers, and to recover the Acquired Assets or their value from Urthbox. Alternatively, he seeks to recover damages occasioned by Urthbox's alleged breach of the Asset Purchase Agreement, and its alleged unjust enrichment through its use of the Acquired Assets after the Asset Purchase Agreement closed. The Trustee also seeks an accounting from Urthbox.[12]

---

[11] *First Amended Complaint*, ECF No. 18.

[12] The Amended Complaint includes the following claims against Urthbox: (i) Count One—Avoidance of Fraudulent Transfers pursuant to sections 544(b) and 551 of the Bankruptcy Code, Amended Complaint ¶¶ 40–47; (ii) Count Three—Avoidance of Fraudulent Transfers pursuant to sections 548, 550 and 551 of the Bankruptcy Code, *id.* ¶¶ 57–62; (iii) Count Four—Avoidance and Recovery of Constructive Fraudulent Transfers pursuant to section 548 and 550 of the Bankruptcy Code, *id.* ¶¶ 63–67; (iv) Count Five—Disallowance of Claims pursuant to section 502(d) of the Bankruptcy Code, *id.* ¶¶ 68–71; (v) Count Six—Avoidance and Recovery of Voidable Transfers pursuant to section 544(b)(1) and 550 of the Bankruptcy Code and sections 271–73, and 278 of the New York Debtor & Creditor Law, *id.* ¶¶ 72–76; (vi) Count Seven—Avoidance and Preservation of the Transfer of the Debtor's Assets pursuant to

5

Urthbox timely served and filed its response to the Complaint (the "Answer and Counterclaim").[13] It includes general denials to the principal allegations of the Complaint, five affirmative defenses (the "Affirmative Defenses") and a six-count counterclaim against TTW (the "Counterclaim"). As support for its Counterclaim, Urthbox contends that it "entered into an arms–length agreement with TTW on what it thought would be mutually beneficial terms," but soon discovered that "[r]ather than purchasing a set of satisfied customers served by a strong core of vendors and suppliers, [it] found itself saddled with undisclosed debts and assets that had been grossly mismanaged." Counterclaim ¶ 1. Urthbox asserts that it "wound up having to pay far more than anticipated to salvage the assets purchased from TTW," and that in the Counterclaim, it "seeks recompense, both directly and in the form of a setoff against any amounts it allegedly owes to TTW's estate." *Id*. Urthbox maintains that as a consequence of TTW's alleged wrongdoing, thus far, it has incurred damages of at least $1,817,323. *Id*. ¶ 38.[14] The Trustee filed an answer to the Counterclaim.[15]

### Trustee's Document Requests

In late 2022, the Trustee served Urthbox with a request for documents for the period from April 10, 2013, through the date of production (the "Document Request").[16] 9/12 Order at 5. Urthbox responded to the request (the "Urthbox Document Response") and produced over 1,400

---

section 274 of the New York Debtor and Creditor Law, *id*. ¶¶ 77–81; (vii) Count Eight—Breach of Contract, *id*. ¶¶ 82–85; (viii) Count Nine—Unjust Enrichment, *id*. ¶¶ 86–89; and (ix) Count Eleven—Accounting and Turnover, *id*. ¶¶ 96-100.

[13] *Answer of Urthbox, Inc. to First Amended Complaint and Counterclaim Against Debtor*, ECF No. 46.

[14] In the six counts it alleges in support of the Counterclaim, Urthbox asserts claims against TTW for: (i) fraudulent misrepresentation, Counterclaim ¶¶ 41–47; (ii) negligent misrepresentation, *id*. ¶¶ 48–53; (iii) fraudulent inducement, *id*. ¶¶ 54–60; (iv) breach of contract, *id*. ¶¶ 61–65; (v) contractual indemnification, *id*. ¶¶ 66–70; and (vi) setoff pursuant to 11 U.S.C. § 553(a) and Cal Code Civ. Proc., § 431.70, *id*. ¶¶ 71–75.

[15] *Answer to Counterclaim*, ECF No. 52.

[16] *Trustee's First Request for Production of Documents* annexed as Exhibit A to the Medina Declaration.

6

pages of documents. *Id.* The Trustee contended, and Urthbox denied, that the Urthbox Document Production was deficient. In a letter dated April 5, 2024 (the "April 5 Letter"), the Trustee narrowed the universe of documents sought by the Trustee but not produced by Urthbox to:

> accounting records and financial statements concerning the revenues generated by the Customer Accounts for the period beginning September 30, 2017, through the present, and Urthbox's tax returns for the same period (the "Disputed Documents").

*Id.* at 6. On April 8, 2024, Urthbox advised that it anticipated completing production of the Disputed Documents in one week. *Id.* However, Urthbox failed to produce any additional records, despite follow-up letters from the Trustee's counsel dated April 16, 2024, and April 22, 2024. *Id.* at 6–7. At a May 7, 2024 pre-trial conference, Urthbox represented that it would produce outstanding financial data by May 21, 2024. *Id.* at 7. However, Urthbox failed to produce any additional material. *Id.* On June 12, 2024, the Court conducted a conference during which it ordered Urthbox to produce all outstanding discovery by June 20, 2024. *Id.*

On June 20, 2024, Urthbox sent the Trustee a letter attaching a Microsoft Excel spreadsheet containing sales and return data from a credit card processor used for TTW's Customer Accounts from October 2017 through April 2018 (i.e., the seven-month earn-out period under the Asset Purchase Agreement). *Id.* On June 21, 2024, the Court conducted a conference to address the Trustee's request for relief under Rule 37. At that hearing, the Court authorized the Trustee to bring the Discovery Motion. *Id.* at 8.

**The Discovery Motion**

In the Discovery Motion, the Trustee sought an order: (i) granting immediate production of the archived emails and Disputed Documents; (ii) setting new definitive date(s) for the Rule 30(b)(6) Deposition following that production; and (iii) imposing sanctions that "include a presumption for trial or in any dispositive motion concerning this matter that the value of transfers

made to Urthbox by the Debtor as not less than $1,222,000.00 . . . and striking Urthbox's [A]ffirmative [D]efenses and [C]ounterclaim." 9/12 Order at 8. Urthbox opposed the motion. To summarize, Urthbox argued:

> [T]hat its document production in this case has been substantial and include[d] complete sales data for the period between October 1, 2017, and April 30, 2018. . . . [T]he remaining requests for the Disputed Documents [were] overbroad and unwarranted on the facts of this case because the Trustee had not articulated any basis for why his Document Request should continue beyond April 30, 2018 to the present day.

*Id.* at 9–10. Urthbox further argued that it should be excused from producing archived emails because it faced technical difficulties in accessing the documents due to age of the relevant email systems, making the cost of recovering the emails unduly burdensome, and that the information contained within its archived emails is duplicative of emails it previously produced. *Id.* at 10.

Urthbox also argued that the Trustee did not provide fair notice of his request for tax returns and that it should not be compelled to produce them because the Trustee could not demonstrate a compelling need for those documents, and the tax returns were irrelevant because they did not distinguish between the business revenues on account of the Acquired Assets and Urthbox's legacy business. *Id.* at 9–10.

### The 9/12 Order

The Court rejected the Trustee's request to compel Urthbox to produce its tax returns and rejected the Trustee's request for sanctions. 9/12 Order at 19-20. However, the Court granted the balance of the relief the Trustee sought in the Discovery Motion. *Id.* The Court rejected Urthbox's contention that Disputed Documents generated after the seven-month earnout period are not relevant to the matters at issue in the adversary proceeding, and overruled Urthbox's objection to the production of its archived emails. *Id.* at 14. The Court directed Urthbox to produce the archived

8

email, and accounting records and financial statements concerning Urthbox's sales generated through the Customer Accounts, all from or after September 30, 2017, through the present. *Id.* at 12-15. The Court directed Urthbox to produce those documents on or before October 15, 2024.

Urthbox failed to make any document production in response to the 9/12 Order on or before October 15, 2024. On October 16, 2024, at Urthbox's request, the Trustee agreed to extend Urthbox's time to comply with the 9/12 Order until October 25, 2024. *See* Trustee's 10/28 Letter.[17] On that day, Urthbox failed to produce any documents. *Id.* In the wake of Urthbox's default under the 9/12 Order, the Trustee requested the Court to convene a pre-trial conference to address renewal of that portion of the Discovery Motion seeking to sanction Urthbox. *Id.* After hearing from the parties, the Court directed Urthbox, "[o]n or before November 22, 2024 . . . [to] complete production to the Chapter 7 Trustee of all documents it was directed to produce in the [9/12 Order]." 11/15 Minute Order.[18]

On November 24, 2024, Urthbox produced five Microsoft Excel spreadsheets purporting to contain sales data from 2018 to 2023 from the merchant account Stripe. Renewed Sanction Motion at 2. It failed to produce any data on the costs and expenses associated with those sales, and failed to produce the archived emails, or any other correspondence. *Id.*

**The Renewed Sanctions Motion**

The Trustee contends that Urthbox continues to be in default under the 9/12 Order. *Id.* He maintains that the only information provided on the spreadsheets suggests that there were at least $2,172,138.67 in sales made from Stripe from 2018 through 2023 alone. *Id.* He argues that sum, taken together with the $2,239,048.51 which had already been received by Urthbox in sales by

---

[17] *Letter of Eric Medina to Court*, dated October 28, 2024, ECF No. 108 (the "Trustee 10/28 Letter").

[18] *Minute Order, dated November 15, 2024*, ECF No. 111.

May 2018, plus the sums transferred on September 30, 2017 (totaling $1,802,975.26) yields a transfer to Urthbox of more than $6,214,162.44 from TTW to Urthbox. *Id.*

The Trustee asserts that his core discovery request focuses on the value that was transferred to Urthbox by TTW under the Asset Purchase Agreement on September 30, 2017. *Id.* ¶ 1. He maintains that while Urthbox contends in the Counterclaim that TTW's assets were misrepresented and were far less valuable than represented, it defied the 9/12 Order requiring production of relevant evidence. *Id.* He complains that Urthbox has made only minimal and incomplete document productions that do not address his core discovery requests. *Id.* ¶ 1. He asserts that Urthbox's failure to produce records of all sales through the present and relevant communications and expenses, limits his ability to put forth expert testimony in this case. *Id.* ¶ 2.

The Trustee argues that the little discovery produced to date by Urthbox establishes that it has received transfers of money or property from TTW resulting in value for only a partial period of $6,214,162.44, and quite possibly much more. *Id.* ¶ 3. He contends that under these circumstances, Urthbox cannot be permitted to maintain a good faith transferee defense or to assert the Counterclaim against TTW. *Id.* The Trustee requests that, as a sanction for Urthbox's default under the 9/12 Order, the Court render an adverse inference that Urthbox received transfers of money and property of TTW which require Urthbox to pay a minimum of $1,222,000.00 (the total of all consideration to be paid under the Asset Purchase Agreement), strike the Answer and Counterclaim, and award the Trustee attorney's fees and costs. *Id.*

**The Opposition**

Urthbox opposes the Renewed Sanctions Motion. It contends that in response to the Discovery Order, it has produced revenue data for the accounts received from TTW from 2017 through 2023 and has produced company-wide financial statements for the period between 2017

and 2021. Opposition ¶ 1. It contends that it has not completed its financial statements for 2022 and 2023 and did not maintain financial statements solely for TTW accounts. *Id.* It acknowledges that revenue data for 2023 and the financial statements were belatedly produced on November 26, 2024. *Id.*

Urthbox contends that there is no basis for granting the Trustee an adverse inference in the amount of $1,222,000 against it for the Acquired Assets. Opposition ¶ 6. It argues that the $1,222,000 is based on the purchase price set forth in the Asset Purchase Agreement for those assets, and that it bears no relation to the actual value of the Acquired Assets. *Id.* at 1. Urthbox maintains that the purchase price was conditional, based on TTW assets meeting set performance benchmarks that were never reached. *Id.* at 1–2.[19] Moreover, it contends that the Acquired Assets have been unprofitable from the date of acquisition to the present and, as such, an adverse inference in any amount above the $196,000 Urthbox actually paid TTW is unjustified, and would constitute an improper windfall to the Trustee. *Id.*

Urthbox maintains that the documents it has produced show that during the period of 2017 through 2023, it received $2,853,000 in revenue stemming from the Acquired Assets, but that its expenses exceeded those revenues. *Id.* ¶¶ 3-4. It contends that it has made a good faith effort to allocate expenses to TTW accounts, based in part on allocating a pro rata share of company-wide expenses to these specific accounts in accordance with the share of the company's revenue attributable to them. *Id.* ¶ 4. Urthbox argues that during the period it incurred expenses aggregating $3,908,457, comprised of: (i) Processing Fees & Refunds; (ii) Shipping & Fulfillment; and (iii)

---

[19] The payment consisted of two components: up to $722,000 from net sales, and a $500,000 convertible note payable after the first $200,000 was paid out. Discovery Motion ¶ 6–7. From the sales component, $196,000 was paid out of $335,000 in net sales. *Id.* ¶ 25. The convertible note would only convert to equity if Urthbox either raised $4 million in venture capital within 24 months or underwent a change of control and neither of which occurred. Opposition at 2, n.1.

People, Operations & Other. *Id.* It contends that taken together, the data demonstrates that Urthbox lost a total of $1,054,788 on the Acquired Assets from that date of their acquisition through the end of 2023. *Id.* ¶¶ 5-6. In that light, it argues there is no basis to assume the value of the assets exceeds the $196,000 already paid for them. *Id.* ¶ 6. It asserts that the Court must deny the adverse inference sought by the Trustee because it would constitute a windfall, and that the Trustee's recovery under Rule 37, if any should be limited to attorney's fees and costs. *Id.*

**The Reply**

The Trustee disputes those contentions. It argues that the discovery produced to date by Urthbox shows that it made sales of at least $6,214,162.44 from TTW's Customer Accounts. Reply at 2–3. He contends that the Court should reject Urthbox's assertion that these amounts are overstated because they do not include Urthbox's "good faith effort to allocate 'company wide' expenses" to these accounts "in accordance with the share of the company's revenue 'attributable' to them" because Urthbox has not produced any evidence of those alleged expenses. *Id*. The Trustee argues that Urthbox's omissions hinder his ability to assess the true extent of the value received on account of TTW's assets and $1,222,000.00 (the sum that Urthbox agreed to pay) is the absolute minimum amount of the value of that transfer. *Id.* at 4.

## LEGAL PRINCIPLES

Compliance with discovery orders "is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril," *Update Art, Inc. v. Modiin Publ'g. Ltd.,* 843 F.2d 67, 73 (2d Cir.1988), and "[a]ll litigants, including *pro ses,* have an obligation to comply with court orders . . . ." *Agiwal v. Mid Island Mortgage Corp.,* 555 F.3d 298, 302 (2d Cir.2009) (per curiam) (quoting *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir.1990)) (internal quotation marks omitted). Under Rule 37(a), a party may move to compel discovery when the opposing party fails

to comply with its discovery obligations. Fed. R. Civ. P. 37(a); *see also World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 158 (2d Cir 2012) ("Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct."). If a court grants the motion, and the producing party fails to obey it, Rule 37(b) empowers courts to issue "just orders" as sanctions. Fed. R. Civ. P. 37(b); *see also Daval Steel Prods. v. M/V Fakredine, et al.,* 951 F.2d 1357, 1363 (2d Cir.1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 356 (S.D.N.Y. 2023) ("The two predicates to the imposition of sanctions under Rule 37(b) are (1) a court order directing compliance with discovery requests, and (2) non-compliance with that order." (internal quotation marks and brackets omitted)).

In general, "[d]isciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc.,* 843 F.2d at 71 (internal quotations omitted)). As relevant, Rule 37(b) states, as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part . . . .

Fed.R.Civ.P. 37(b)(2)(A).

When acting pursuant to Rule 37, a court "has wide discretion in sanctioning a party for discovery abuses . . . ." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citing *New York State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1354 (2d Cir. 1989)). There are "two basic limitations" to the exercise of that discretion—"First, the sanctions must be just. Second, the sanctions must relate to the particular claim to which the discovery order was addressed." *Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 218 (S.D.N.Y. 2021) (internal quotation marks and citations omitted); *see also Shcherbakovskiy v. Da Capo A1 Fine. Ltd.,* 490 F.3d 130, 140 (2d Cir.2007) (noting that a sanction is "just" when "the severity of [the] sanction [is] commensurate with the noncompliance.").

In exercising such discretion, courts consider a number of factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal,* 555 F.3d at 302 (internal quotation marks omitted). Those factors "are not exclusive, and they need not each be resolved against" a party to warrant sanctions. *S. New England Tel. Co.,* 624 F.3d at 144.

## ANALYSIS

The 9/12 Order directed Urthbox to produce to the Trustee, on or before October 15, 2024, archived emails and accounting records and financial statements concerning Urthbox's sales generated through the Customer Accounts from or after September 30, 2017, through the present.

9/12 Order at 12-15. On November 26, 2024, Urthbox responded to the order by transmitting five Microsoft Excel spreadsheets purporting to contain sales data from 2018 to 2023 from the merchant account Stripe. Urthbox contends that in doing so it has produced revenue data for the Customer Accounts from 2017 through 2023, and company-wide financial statements for the period between 2017 and 2021. Urthbox contends that it has not completed its financial statements for 2022 and 2023 and did not maintain financial statements solely for TTW accounts. Urthbox did not produce any archived emails or other correspondence.

The 9/12 Order is a discovery order subject to Rule 37. The Court excuses Urthbox's failure to produce company-wide financial statements for 2022 and 2023 and statements solely for TTW accounts as Urthbox claims these records were never created. Reply ¶ 1. And indeed, "[a]lthough a party's failure to keep records may sometimes warrant drawing negative inferences against that party about what the records would have reflected, a failure to create records—as opposed to the destruction of records that were kept—is not spoliation." *See R.F.M.A.S., Inc. v. So,* 271 F.R.D. 13, 44 (S.D.N.Y. 2010) (footnote omitted). However, the Court finds that Urthbox failed to comply with the 9/12 Order, and runs afoul of Rule 37, not because it failed to create new documents, but because it did not produce documents in its possession and control, to wit: the archived emails, the sales data for 2024, and the data regarding expenses associated with sales during the period of May 2018 to present.

The Trustee seeks three different types of sanctions pursuant to Rule 37: (i) the imposition of an adverse inference that at minimum, Urthbox received $1.22 million in value under the Asset Purchase Agreement, (ii) an order striking the Answer and Counterclaim; and (iii) an award of attorney's fees and costs for the motion. *See* Renewed Sanction Motion ¶ 3. In considering that request, the Court notes that it "should always seek to impose the least harsh sanction that will

remedy the discovery violation and deter such conduct in the future." *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13-6653, 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015) (citation and quotation marks omitted).

The Court considers those matters below.

## Adverse Inference

"It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (citations omitted). The sanction of an adverse inference under Rule 37(b)(2)(A)(i) is an inference that the unavailable evidence "would have been of the nature alleged by the party affected by its delayed production." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (quoting *Kronisch,* 150 F.3d at 127) (internal quotation marks omitted). "Although adverse inference instructions 'usually [are] employed in cases involving spoliation of evidence,' a court also may grant an adverse inference instruction for the non-production of evidence." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 54 (S.D.N.Y. 2014) (quoting *Residential Funding,* 306 F.3d at 107). The adverse inference is meant to restore a prejudiced party to the "position he would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch,* 150 F.3d at 126.

"A court may grant an adverse inference instruction for the non-production of evidence upon a showing '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the . . . claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.'" *Savor Health,*

*LLC v. Day*, No. 19-9798, 2022 WL 1912881, at *4 (S.D.N.Y. May 17, 2022) (citation and

quotation marks omitted), *report and recommendation adopted*, No. 19-9798, 2022 WL 2315059

(S.D.N.Y. June 28, 2022). In determining whether a party has "a culpable state of mind," the Court

need only find that the party acted with ordinary negligence. *Icon Int'l, Inc. v. Elevation Health

LLC*, 347 F.R.D. 274, 285 (S.D.N.Y. 2024).

The Trustee contends and Urthbox does not contest that in fraudulent transfer cases, to

determine reasonably equivalent value, courts examine the totality of the circumstances

surrounding the transfer in question. Renewed Sanctions Motion ¶ 2 (citing *In re Gonzalez*, 342

B.R. 165, 173 (Bankr. S.D.N.Y. 2006)). He points to the following three factors as relevant to the

"totality of the circumstances inquiry:" (i) the fair market value of the economic benefit by the

debtor; (ii) the arms-length nature of the transaction; and (iii) the good faith of the transferee. *Id*.

He contends that "[i]f a debtor receives value that is so low that it shocks the conscience, then the

transfer is presumptively less than reasonably equivalent value*" Id*. at ¶ 2 (citing *Matter of Long

Dev., Inc.*, 211 B.R. 874, 881 (Bankr. W.D. Mich. 1995)).

The Trustee asserts that the estate did not receive reasonably equivalent value from

Urthbox for the Acquired Assets. He maintains that although the Counterclaim alleges that TTW

misrepresented the value of those assets, and that they were far less valuable than represented,

Urthbox has defied the 9/12 Order requiring production of evidence that is relevant to those

contentions. Renewed Sanctions Motion ¶ 1. The Trustee argues that the estate is prejudiced by

Urthbox's failure to produce financial records of all sales generated through the Customer

Accounts, through the present, along with relevant expenses and communications. First, he argues

that it limits his ability to put forth key expert testimony that is based upon data showing that the

entirety of the consideration that was transferred by Urthbox to TTW, was far less than the value

of the assets transferred by TTW to Urthbox. *Id.* ¶ 2. Second, he argues that it prejudices his defense to the Counterclaim. *Id.* ¶ 3. The Trustee contends that to mitigate the prejudice caused by Urthbox's breach of the 9/12 Order, he is entitled to an inference that under the Asset Purchase Agreement, Urthbox received transfers of money and property of TTW valued at a minimum of $1,122,000, i.e., the total of all consideration to be paid under the Asset Purchase Agreement. *Id.* ¶ 3; Reply at 5.

The Trustee's discovery requests focus on the value of the assets that TTW transferred to Urthbox under the Asset Purchase Agreement. That value is measured, in part, by the net revenues generated by Urthbox under the Customer Accounts. The revenue and expense data that the Trustee seeks in the Document Request is central to both his prosecution of the estate's claims against Urthbox and his defense of Urthbox's Counterclaim. That information is exclusively within Urthbox's control.

There is no dispute that Urthbox produced evidence of the sales for the Customer Accounts, including information regarding the expenses associated with those sales, for the seven-month earn-out period under the Asset Purchase Agreement. In the 9/12 Order, the Court directed Urthbox to produce that information for the balance of 2018 through the present, but Urthbox has failed to do so. It has produced information regarding the revenue associated with the Customer Accounts, but not the expenses incurred in generating that revenue. Urthbox does not deny that it has control over the evidence and that the Court directed Urthbox to produce it. Urthbox offers no excuse for its failure to comply with the 9/12 Order.

Still, Urthbox insists that the Court should not make that adverse inference. It argues that the $1,222,000 purchase price under the Asset Purchase Agreement bears no relation to the actual value of the Acquired Assets and would constitute an improper windfall to the Trustee because the

purchase price under the agreement price was conditional on the Customer Accounts meeting set performance benchmarks that were never reached. Opposition at 1-2. Urthbox contends that its records show that during the period of 2017 through 2023, it received $2,853,000 in revenue stemming from the Customer Accounts. It contends that the expenses attributed to those revenues and allocated to those accounts, far outpace those revenues. *Id*. ¶ 4. It maintains that during that period it incurred expenses aggregating $3,908,457, comprised of: (i) Processing Fees & Refunds; (ii) Shipping & Fulfillment; and (iii) People, Operations & Other. *Id.* It argues that taken together, the data demonstrates that Urthbox lost a total of $1,054,788 on the Acquired Assets from that date of their acquisition through the end of 2023. *Id*. ¶¶ 5-6.

However, that data is not supported by documentary or other evidence produced by Urthbox. Instead, Urthbox relies on its "good faith effort to allocate expenses to TTW accounts, based in part on allocating a pro rata share of company-wide expenses to these specific accounts in accordance with the share of the company's revenue attributable to them." Opposition ¶ 4. Notwithstanding the 9/12 Order, Urthbox has not produced documents that are plainly relevant to the matters at issue in the adversary proceeding. In opposing the motion, Urthbox has compounded the prejudice to the Trustee by purporting to rely on information it was ordered but failed to produce. There is no merit to Urthbox's contention that an adverse inference will give rise to an improper windfall to the Trustee when Urthbox itself has failed to produce the very documents that could prove or disapprove such a windfall.[20] Accordingly, the Court grants the Trustee's request for an adverse inference.

---

[20] In its Opposition, Urthbox misplaces its reliance on *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18-4476, 2021 WL 1750866, at *7 (S.D.N.Y. Mar. 31, 2021) ("*Local 3621*"), *report and recommendation adopted*, No. 18-4476, 2021 WL 2827347 (S.D.N.Y. July 7, 2021) and *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05-4837, 2006 WL 1409413, at *4 (S.D.N.Y. May 23, 2006) ("*Phoenix Four*"). In *Local 3621,* the court denied the plaintiffs' request for an adverse inference because the defendants had made multiple

**Striking The Counterclaim[21]**

Fed. R. Civ. P. 37(b)(2)(A)(iii) permits a court to strike a party's "pleadings in whole or in part" as a discovery sanction; *see also Icon Int'l,* 347 F.R.D. at 294 ("Fed. R. Civ. P. 37(b)(2)(A)(iii) permits a court to strike a party's pleadings in whole or in part as a discovery sanction." (internal quotation marks omitted)). "[S]triking a party's pleading is one of the harshest of discovery sanctions, [accordingly] such relief is to be granted sparingly, and only in extreme circumstances." *Honey Do Men Gutters, Inc. v. Gumbs (In re Gumbs)*, No. 18-08237, 2022 WL 467798, at *2 (Bankr. S.D.N.Y. Feb. 15, 2022) (citation and internal quotation marks omitted). Accordingly, "[w]hile district courts generally have broad discretion with respect to the imposition of sanctions," the Second Circuit has "recognized that dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Koehl v. Bernstein*, 740 F. 3d 860, 862 (2d Cir. 2014) (citations omitted).

---

productions of demographic data, and the court found that the plaintiffs had not been prejudiced to the extent that warranted such a severe sanction. *Local 3621,* 2021 WL 2827347 at *12. The court noted that the defendants had produced some amount of data, and the plaintiffs had been able to file their class motion despite the delays. *Id.* at *13. The court concluded that awarding an adverse inference would be disproportionate to the prejudice suffered by the plaintiffs. *Id.* In contrast, Urthbox has failed to produce complete financial documentation and archived emails, which are required by the 9/12 Order. The Trustee has been unable to effectively litigate the issues raised in Urthbox's pleadings due to the lack of production The case is distinguishable from *Local 3621* because Urthbox violated the 9/12 Order, and its violation caused prejudice to the Trustee.

*Phoenix Four* is also distinguishable. There, the court found that the defendants' abandonment of evidence did not warrant an adverse inference instruction because the plaintiff had not established that the evidence would have supported its claims, and because the defendants had produced electronic documents, albeit after the close of discovery. *Phoenix Four*, 2006 WL 1409413, at *5-7. Here, Urthbox has not produced the required evidence, despite the 9/12 Order's direction that it do so. Moreover, Urthbox has not made a belated production of evidence that would mitigate the prejudice suffered by the Trustee.

[21] At the January 7, 2025 hearing, the Trustee withdrew his request to strike Urthbox's Answer.

The Trustee seeks to strike the Counterclaim as an additional[22] sanction in the wake of Urthbox's failure to comply with the Discovery Requests and the 9/12 Order. The Trustee makes this request in passing, and fails to point to facts or law that support the request. *See* Discovery Motion ¶ 36; Renewed Sanction Motion at ¶ 3; Reply at 5. The Trustee has failed to meet his burden of demonstrating that in the context of this case, the extraordinary relief available under Rule 37(b)(2)(A)(iii) is warranted. The Court denies the Trustee's request to strike the Counterclaim.

### Award of Costs and Attorney's Fees

Rule 37(b)(2)(C) provides that when a party fails to obey a discovery order, "[i]nstead of or in addition to [granting relief available under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Urthbox acknowledged the Court's power to award attorneys and costs against it in resolving this motion. Opposition ¶ 6.

Urthbox has not demonstrated that its failure to comply with the 9/12 Order was substantially justified, and it has not identified any circumstances that would make an award of expenses unjust. The Court finds that an award of reasonable expenses, including attorney's fees, against Urthbox is warranted. The Court grants the Trustee's request for reasonable fees and costs under Rule 37(b)(2)(C).

---

[22] In his 10/28 Letter, the Trustee requested that the Court strike the Answer and the Counterclaim as an alternative sanction to the adverse inference. Trustee 10/28 Letter at 2.

Within fifteen business days from the entry of this Memorandum Decision and Order, the

Trustee's counsel will serve and file an affidavit detailing the reasonable costs and attorney's fees

incurred in the prosecution of the Renewed Sanctions Motion. Within fifteen days of the filing of

the affidavit, Urthbox will serve and file its objection, if any, to the fee request. Thereafter, the

Court will schedule a hearing on the fee request.

## **CONCLUSION**

For all the reasons discussed above, the Court grants the Renewed Sanctions Motion to

award the fees and costs as well as the adverse inference requested by the Trustee. The Court

denies the balance of the motion.

IT IS SO ORDERED.


Dated:  January 17, 2025
        New York, New York


                                                    /s/ *James L. Garrity, Jr.*
                                                    Hon. James L. Garrity, Jr.
                                                    U.S. Bankruptcy Judge